**LEWIS BRISBOIS BISGAARD & SMITH LLP**
RIMA M. BADAWIYA, SB# 204174
   Email: Rima.Badawiya@lewisbrisbois.com
650 East Hospitality Lane, Suite 600
San Bernardino, California 92408
Telephone: 909.387.1130
Facsimile:  909.387.1138

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
LANN G. McINTYRE, SB# 106067
   Email: Lann.McIntyre@lewisbrisbois.com
RITA R. KANNO, SB# 230679
   Email: Rita.Kanno@lewisbrisbois.com
550 West C Street, Suite 1700
San Diego, California 92101
Telephone: 619.233.1006
Facsimile:  619.233.8627

Attorneys for Defendants
SILVERADO SENIOR LIVING, INC., SILVERADO SENIOR LIVING MANAGEMENT, INC.,
SUBTENANT 330 NORTH HAYWORTH AVENUE, LLC, LOREN SHOOK, JASON RUSSO

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOE ANN CLACK, by and through her Guardian *ad Litem*, ZOANNE CLACK,<br><br>                    Plaintiff,<br><br>        vs.<br><br>SILVERADO SENIOR LIVING, INC.; SILVERADO SENIOR LIVING MANAGEMENT, INC.; SUBTENANT 330 NORTH HAYWORTH AVENUE, LLC; LOREN SHOOK, individually; JASON RUSSO, individually; and Does 1-25, inclusive,<br><br>                    Defendants. | Case No.<br><br>**DEFENDANTS' NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT PURSUANT TO 28 U.S.C. §§ 1331, 1441, 1442 AND 1446** |

**TO THE HONORABLE COURT, PLAINTIFF HEREIN, AND HER RESPECTIVE COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendants SILVERADO SENIOR LIVING, INC., SILVERADO SENIOR LIVING MANAGEMENT, INC., SUBTENANT 330 NORTH HAYWORTH AVENUE, LLC;  LOREN SHOOK and, JASON RUSSO ("Defendants"), by and through its counsel, files this Notice of Removal. This is a civil action over which this Court has original jurisdiction pursuant to 28 U.S.C. §§

1331 and 1442 and is one that may be properly removed to this Court pursuant to 28
U.S.C. § 1441. Pursuant to 28 U.S.C. § 1446(a), the Defendants assert the following
grounds in support of its Notice of Removal:

## I.    PLEADINGS RELATED TO REMOVED CASE

1.    This action was initially filed on or about December 15, 2020, in the
Superior Court of California, County of Los Angeles, entitled *Joe Ann Clack, by and
through her Guardian ad Litem, Zoanne Clack v. Silverado Senior Living, Inc.;
Silverado Senior Living Management, Inc., Subtenant 330 North Hayworth Avenue,
LLC; Loren Shook, individually; Jason Russo, individually; and Does 1-25, inclusive*,
Los Angeles County Superior Court Case No. 20STCV47881.

Pursuant to 28 U.S.C. §1446(a), true and correct copies of all process, pleadings
and orders received by Subtenant in the Superior Court action are attached hereto as
**Exhibit A**.

## II.    REMOVAL IS TIMELY

2.    Defendants first received a copy of the complaint on April 5, 2021.
**Exhibit A**.  This Notice of Removal is filed within thirty (30) days of Defendants first
learning of the lawsuit; therefore, the Notice is timely pursuant to 28 U.S.C. § 1446(b).
*See Romulus v. CVS Pharmacy, Inc.*, 770 F.3d 67 (1st Cir. 2014); *See Chavarria v.
Mgmt. & Training Corp.*, No. 16-cv-617-H (RBB), 2016 U.S. Dist. LEXIS 197047,
at *6 (S.D. Cal. May 13, 2016) (indicating first 30-day-time-period is triggered if the
basis of removal is clear from initial pleading).

3.    Concurrent with the filing of this Notice, Defendants are serving this
Notice of Removal upon Plaintiffs and filing a copy of this Notice of Removal with
the Clerk of the Superior Court of the County of Los Angeles pursuant to 28 U.S.C.
§ 1446(d).

## III.    VENUE IS PROPER IN THIS COURT

4.    Removal to the United States District Court for the Central District of
California is proper because the state action was filed in the Superior Court of the

1  State of California for the County of Los Angeles, as referenced in paragraph 1, above.

2  Accordingly, this Court is the appropriate venue for filing this Notice of Removal

3  pursuant to 28 U.S.C. § 1441(a) and 28 U.S.C. § 1446(a).

4  **IV.  JURISDICTION EXISTS UNDER 28 U.S.C. § 1331 BASED ON THE PREP ACT**

5

6      5.      This is a civil action over which the Court has original jurisdiction under

7  28 U.S.C. §§ 1331 and is one that may be removed to this Court pursuant to 28 U.S.C.

8  §§ 1441 and 1446 based on federal question.

9      6.      Plaintiff's Complaint faults Defendants for the manner in which they

10 used and administered COVID-19 countermeasures as part of their infection control

11 program and further alleges that, as result of this decision making, Joe Ann Clack

12 became infected with COVID-19 during her residency at Silverado in April 2020.

13 (**Exhibit A**, pgs. 2, 5.)  These claims by their very nature relate to Defendants' use

14 and allocation of PPE and COVID-19 testing as well as the administration of their

15 countermeasure program and facility which was admittedly in place at that time to

16 prevent the transmission of COVID-19 at the facility. (*See* Defendants' RFJN

17 Exhibits 9, 32.)

18     7.      Plaintiff alleges Defendants are culpable for the way they employed

19 CDC guidelines to protect and treat plaintiff against infection from COVID-19, for

20 failing to take all reasonable and necessary precautions to ensure Plaintiff did not

21 contract COVID-19.  In other words, Plaintiff seeks to hold Defendants liable for its

22 decisions  directly  relating  to  the  delivery,  distribution,  and  dispensing  of

23 countermeasures to combat COVID-19, for the manner in which they  tested residents

24 for COVID-19 and for the way they administered and utilized equipment and supplies

25 which are designated countermeasures to combat the COVID-19 outbreak, including

26 but not limited to items identified as PPE. Therefore, Plaintiff's claims fall under the

27 Public Readiness and Emergency Preparedness Act, 42 U.S.C. §§ 247d-6d and 247d-

28 6e (2006) (the "PREP Act"), the applicability of which presents a significant Federal

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  Question relating to the ongoing national emergency and COVID-19 pandemic.
2  (**Exhibit A**, generally and pp. 3-5, 13-16.)

3      8.    The PREP Act and the Preparedness Act for Medical Countermeasures
4  Against COVID-19, 85 Fed. Reg. 15198 (Mar. 17, 2020) are federal statutes that
5  apply specifically to healthcare providers such as Defendants in their purchase,
6  administration, allocation, dispensing, prescribing, distribution and use of
7  countermeasures to prevent or mitigate the spread of COVID-19.

8      9.    The PREP Act provides for exclusive Federal jurisdiction, an exclusive
9  Federal cause of action for a suit against a covered person, and complete preemption,
10 which exists when the preemptive statute contains civil enforcement provisions within
11 the scope of which state law claims fall and there is a "clear indication of
12 Congressional intention to permit removal." *Railway Labor Executives Ass'n v.*
13 *Pittsburgh & Lake Erie R.R.* Co., 858 F.2d 936, 942 (3rd Cir. 1988) citing *Franchise*
14 *Tax Bd. of State of Calif. v. Construction Laborers Vacation Trust for Southern Calif.*,
15 463 U.S. 1, 24 (1983). (*See also* Defendants' RFJN Exhibits 31, 32.)

16     10.   Defendants' purchasing, administration, dispensing, prescribing,
17 distribution and use of countermeasures, such as PPE and testing equipment to prevent
18 or mitigate the spread of COVID-19, which forms the basis of this action, presents a
19 federal question under the PREP Act giving this Court original jurisdiction
20 completely preempting all state law claims asserted by Plaintiff in the Complaint as
21 Defendants and their staff were acting as qualified persons and program planners for
22 the purpose of developing and implementing policies, procedures, and other
23 countermeasures to prevent, limit, and/or control spread of COVID-19. 42 U.S.C. §
24 247d-6d. Defendants and their staff are also covered persons authorized to administer
25 FDA approved COVID-19 devices, tests and medications use to treat the same.

26     11.   The PREP Act provides liability protections for pandemic and epidemic
27 products and security countermeasures. The PREP Act is applicable with respect to a
28 "covered countermeasure," which definition includes: "(1) a qualified pandemic or

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

epidemic product (as defined in § 247d-6d (i) (7)) . . . or (4) a respiratory protective device that is approved by the National Institute for Occupational Safety and Health ("NIOSH") and that the Health and Human Service Secretary determines to be a priority for use during a public health emergency declared under section 247d." 42 USC § 247d-6d (i) (1).

12. Specifically, this legislation empowers the Secretary of Health and Human Services (HHS) to issue a written declaration and provide that a "covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure" during a health emergency. 42 U.S.C. § 247d-6d(a)(1). Also, 28 U.S.C. § 247d-6d(b)(8) states that "no State or political subdivision of a State may establish, enforce, or continue in effect with respect to a covered countermeasure any provision of law or legal requirement that is different from, or in in conflict with, any requirement applicable under this section" and relates to, among other things, use or administration of a covered countermeasure."

13. On March 10, 2020, United States Health and Human Services Secretary issued a Declaration invoking the PREP Act for the COVID-19 pandemic. The Declaration was effective as of February 4, 2020. (*See* Defendants' RFJN Exhibit 2.) In the initial Declaration, Secretary Azar declared that "Administration of Covered Countermeasures means physical provision of the countermeasures to recipients, ***or activities and decisions directly relating to public and private delivery, distribution, and dispensing of the countermeasures to recipients; management and operation of countermeasure programs; or management and operation of locations for purpose of distributing and dispensing countermeasures***." [Emphasis added.]

14. The Secretary Azar subsequently issued an Amended Declaration under the PREP Act, which was effective as of March 27, 2020. (*See* Defendants' RFJN Exhibit 3.) The Amendment added respiratory protective devices approved by NIOSH

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

(National Institute for Occupational Safety and Health) as a covered countermeasure under the PREP Act. On June 4, 2020, the Secretary further amended the March 10, 2020 Declaration to clarify that covered countermeasures under the Declaration include qualified products that limit the harm COVID-19 might otherwise cause. This Amendment was effective as of February 4, 2020. (*See* Defendants' RFJN Exhibit 4.) 85 FR 21012.[1]

15. On December 3, 2020, the Secretary issued a Fourth Amended Declaration under the PREP Act, effective as of February 4, 2020. (*See* Defendants' RFJN Exhibit 5–December 3, 2020 Fourth Amended Declaration of Health and Human Services Secretary Azar Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19.) The Secretary's Fourth Amended Declaration provides that "***COVID-19 is an unprecedented global challenge that requires a whole-of-nation response that utilizes federal, state, and local-distribution channels as well as private-distribution channels. Given the broad scale of this pandemic, the Secretary amends [Section VII of] the Declaration to extend PREP Act coverage to additional private-distribution channels***...." [Emphasis added.] (*See* Page 12 of Defendants' RFJN-Exhibit 5.)

16. The Fourth Amended Declaration specifically provides that Section VII of the Declaration is amended to extend liability protection under the PREP Act to Covered Persons for Recommended Activities that are related to: "Covered Countermeasures that are:

a. Licensed, approved, cleared or authorized by the FDA (or that are permitted to be used under an Investigational New Drug Application or an Investigational Device Exemption) under the FD&C Act or PHS Act to treat, diagnose, cure, prevent, mitigate, or limit the harm from COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom; or

---

[1] *See* also Families First Coronavirus Response Act, H.R. 6201, 116th Cong. § 6005 (2020).

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

b.    A respiratory protective device approved by NIOSH under 42 CFR part 84, or any successor regulations, that the Secretary determines to be priority for use during a public health emergency declared under section 319 of the PHS Act to prevent, mitigate, or limit the harm from COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom." Defendants' RFJN- Exhibit 5, 85 Fed. Reg. 79194, 79196-97.[2]

17.    The Fourth Amended Declaration further makes explicit that there can be situations where *not* administering a Covered Countermeasure to a particular individual can qualify as a decision relating to the administration of a countermeasure under the PREP Act. As an example, it states:    ***"Prioritization or purposeful allocation of a Covered Countermeasure, particularly if done in accordance with a public health authority's directive, can fall within the PREP Act and this Declaration's liability protections.***" Defendants' RFJN-Exhibit 5, 85 Fed. Reg. 79194, 79197, Amendment to Section IX of the Secretary's Declaration (emphasis added).

18.    In addition, the Fourth Amended Declaration provides that "***the Declaration must be construed in accordance with the Department of Health and Human Services (HHS) Office of the General Counsel (OGC) Advisory Opinions [of April 17, 2020 as modified on May 19, 2020 and October 22, 2020 as modified on October 23, 2020] on the Public Readiness and Emergency Preparedness Act***

---

[2] Moreover, attached as Appendix A to April 17, 2020 Advisory Opinion is a list of the "covered countermeasures" for which emergency use authorizations have been issued by the United States Food and Drug Administration. (*See* Exhibit 8 and 10 to Defendants' RFJN.) The list includes twelve pages of COVID-19 test kits, and provides that face shields, gowns, shoe covers, non-surgical isolation gowns, surgical caps, properly labeled non-surgical masks, and certain non-NIOSH approved respirators are covered by an EUA. Surgical masks are not listed; however, such masks are Class II medical devices which are cleared by the FDA for use. (*See* 21 CFR 878.4040). Thus, COVID-19 testing kits, face masks, gowns, gloves and other PPE are "qualified pandemic or epidemic products" and "covered countermeasures" under the PREP Act, as such products are either FDA cleared/approved or are included in an EUA.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   *and the Declaration ("Advisory Opinions"). The Declaration incorporates the*

2   *Advisory Opinions for that Purpose.*" Defendants' RFJN–Exhibit 5, 85 Fed. Reg.

3   79192, 79194-95 (emphasis added). In doing so, these Advisory Opinions are

4   afforded *Chevron* controlling weight. *See Chevron USA, Inc. v. Natural Resources*

5   *Defense Council, Inc.*, 467 US 837, 843-844 (1984) (where Congress has expressly

6   delegated interpretive authority to an agency, the agency's interpretative

7   proclamations are controlling on the federal courts). Moreover, section (b)(7) of the

8   PREP Act provides that "[n]o court of the United States, or of any state, shall have

9   subject jurisdiction to review whether by mandamus or otherwise, any action by the

10  Secretary under this subsection." 42 U.S.C. §§ 247d-6d and 247d-6e.

11      19.   The Fourth Amended Declaration also directly acknowledges the

12  federal interests in cases requiring interpretation and application of the PREP Act:

13      "COVID-19 is a global challenge that requires a whole-of-nation
        response. **There are substantial federal legal and policy**
14      **issues, and substantial federal legal and policy interests**
        **within the meaning of *Grable & Sons Metal Products, Inc. v.***
15      ***Darue Eng'g. & Mf'g.*, 545 U.S. 308 (2005), in having a**
        **unified, whole-of-nation response to the COVID-19**
16      **pandemic among federal, state, local, and private-sector**
        **entities.**"

17

18  *See* Defendants' RFJN Exhibit 5, 85 Fed. Reg. 79191, 79197 (emphasis added).

19      20.   The Fourth Amended Declaration confirms the interpretation of the

20  PREP Act is a matter of significant federal concern, and that removal of any case

21  involving the interpretation of that Act is proper in accordance with the Supreme

22  Court holding in *Grable*.

23      The world is facing an unprecedented pandemic. To effectively respond,
        there must be a **more consistent** pathway for Covered Persons to
24      manufacture, distribute, **administer** or use Covered Countermeasures
        across the nation and the world. Thus, there are substantial federal legal
25      and policy issues, and substantial federal legal and policy interests within
        the meaning of *Grable & Sons Metal Products, Inc. v. Darue Eng'g. &*
26      *Mf'g.*, 545 U.S. 308 (2005), in having **a uniform interpretation of the**
        **PREP Act**. [Emphasis added.]

27

28  *See* Defendants' RFJN Exhibit 5,  85 Fed. Reg. 79191, 79197 (emphasis added).

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

21.     Moreover, on January 8, 2021, HHS, Office of the General Counsel, issued Advisory Opinion 21-01, which further confirms that the PREP Act can be triggered even in cases of non-use of a covered countermeasure when the non-use is *the outcome of some form of decision-making process.* (*See* Defendants' RFJN Exhibit 9, pg. 3.) According to the Opinion,  the view that the PREP Act does not encompass alleged omissions to use covered countermeasures "clashes with the plain language of the PREP Act, which extends immunity to anything 'relating to' the administration of a covered countermeasure." (*See* Defendants' RFJN, Exhibit 9, pgs. 2-3.)

22.     The Advisory Opinion further provides, after due analysis, that the PREP Act **is a complete preemption statute, stating** that the "sine qua non of a statute that completely preempts is that it establishes either a federal cause of action, administrative or judicial, as the only viable claim or vests exclusive jurisdiction in a federal court. The PREP Act does both." (*See* Defendants' RFJN, Exhibit 9, pgs. 2-3.)

23.     The United States concurred, filing a Statement of Interest in *Bolton v. Gallatin Center for Rehabilitation & Healing, LLC*, Case 3:20-cv-00683 (M.D. Tenn.) The United States analyzes the relevant law and asserts **the PREP Act is a complete preemption statute** with respect to the administration or use of covered countermeasures. **"Two key provisions of the PREP Act operate together to demonstrate its completely preemptive nature: the immunity provision and the exclusive alternative remedy provision**." (*See* Defendants' RFJN, Exhibit 31.)

24.     A number of other statutes with analogous remedial structures have been held to establish complete preemption and original federal jurisdiction:

**Labor Management Relations Act ("LMRA").** The Supreme Court found the LMRA to be a complete preemption statute. Thereunder, any state law claims that are substantially dependent on analysis of a collective-bargaining agreement are preempted by section 301 of the LMRA and must be brought in federal court.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). However, before an employee

2   may bring a Section 301 claim in court, the employee must "'at least *attempt to*

3   *exhaust exclusive grievance and arbitration procedures* established by the

4   [collective] bargaining agreement.'" *Campbell v. Kane, Kessler, P.C.*, 144 F. App'x

5   127, 130 (2d Cir. 2005) (quotation omitted) [Emphasis added.]

6       **Employee Retirement Income Security Act ("ERISA)**. ERISA, another

7   complete preemption statute, also has a "firmly established federal policy favoring

8   exhaustion of administrative remedies" for purposes of, *inter alia*, reducing the

9   number of frivolous lawsuits, providing a non-adversarial method of claims

10  settlement and minimizing the costs of claims settlement for all. *Kennedy v. Empire*

11  *Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993); *Paese v. Hartford Life*

12  *& Acc. Ins. Co.*, 449 F.3d 435, 445 (2d Cir. 2006).

13      **Air Transportation Safety and System Stability Act ("ATSSSA").** The

14  Second Circuit has also applied the doctrine of complete preemption to the ATSSSA,

15  which is structurally similar to the PREP Act. Congress passed the ATSSSA after the

16  September 11th terrorist attacks to create an exclusive federal cause of action for

17  damages "arising out of the hijacking and subsequent crashes" of the aircraft used in

18  the attacks. ATSSSA § 408(b)(1), 49 U.S.C. § 40101. Like the PREP Act, the

19  ATSSSA also includes a fund, where a claim is filed and reviewed to determine

20  whether the claimant is an eligible individual under the Act. ATSSSA § 405; 49

21  U.S.C. §40101. Claims are limited under the fund and do not include punitive

22  damages awards. Similar to the PREP Act, Congress' principal goals in enacting the

23  ATSSSA "were to provide relief *without litigation* to individuals harmed as a result

24  of the crashes and to *limit the liability of entities* that were likely to be sued for injuries

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

92048504v.1   DEFENDANTS' NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT

suffered in connection with the crashes." *In re WTC Disaster Site*, 414 F.3d 352, 377 (2d Cir. 2005) [Emphasis added].[3]

**Federal Tort Claims Act ("FTCA").** The FTCA, which is strikingly similar to the PREP Act, immunizes certain persons from liability and also provides an administrative/judicial remedial scheme for claims falling thereunder. The FTCA affords liability protection to federal employees for any negligent or wrongful acts committed while acting within the scope of their employment and further provides an exclusive federal cause of action under specified circumstances. Like the PREP Act, before a judicial action may be instituted, the claimant must first present the claim before the appropriate federal agency for adjudication. 28 U.S.C. § 2675. This jurisdictional requirement cannot be waived, *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005), resulting in the dismissal of claims where a claimant fails to exhaust the administrative remedies. *See, e.g., Leytman v. United States*, No. 19-3929, 2020 WL 6297440, at *2 (2d Cir. Oct. 28, 2020) [affirming dismissal of pending and unexhausted claims under FTCA for lack of subject matter jurisdiction]. Indeed, the federal remedy under the FTCA, similar to the PREP Act, ensures that "decisions and conduct of federal public servants in the course of their work *will not be adversely affected by fear of personal liability* for money damages and of the burden of defending damage liability claims." *Melo v. Hafer*, 13 F.3d 736, 744 (3d Cir. 1994) (Emphasis added).

25.    Like the statutes discussed above, the PREP Act creates an exclusive federal remedy for claims falling thereunder, involving both a pre-litigation administrative component and a judicial component. 42 U.S.C. § 247d-6e; § 247d-6d(d)(e). This remedial structure was purposefully established by Congress and is

---

[3] Notably, the PREP Act shares operative language with the ATSSSA. Compare *In re WTC Disaster Site*, 414 F.3d, at 375-76 [discussing the breadth and meaning of the operative phrases "arising out of" "resulting from" and "relating to"] with 42 U.S.C. § 247d-6d(a)(1).

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

92048504v.1

explicitly "exclusive of any other civil action or proceeding for any claim or suit [the PREP Act] encompasses …." 42 U.S.C. § 247d-6e(d).

26.    A recent case addresses the January 8, 2021 Advisory Opinion and concludes that removal is proper because the PREP Act is a complete preemption statute. On **February 10, 2021,** in *Garcia v. Welltower OpCo Group LLC*, No. 8:20-CV-02250, at *8-9 (C.D. Cal. Feb. 10, 2021), the court denied a remand motion, holding that the PREP Act has complete preemptive effect after analyzing the relevant law and also affording appropriate deference to the Advisory Opinion. *Id.* at p. 10. (*See* Defendants' RFJN, Exhibit 32.)

27.    Under the PREP Act, Congress has provided an exclusive federal remedy and exclusive federal jurisdiction for the substance of the allegations and relief sought by Plaintiff in the Complaint thereby completely preempting State law with respect to her claims regarding Defendants' use of countermeasures, such as PPE and COVID-19 testing, and the administration of their COVID-19 countermeasure program to diagnose, treat, prevent or mitigate the spread of COVID-19.

## V.    THE PREP ACT APPLIES BECAUSE DEFENDANTS ARE COVERED PERSONS UNDER THE STATUTE

28.    The PREP Act applies to "Covered Persons" who administer or use a "Covered Countermeasure" during a "Recommended Activity" in relation to COVID-19. 42 U.S.C. § 247d-6d.

29.    A "covered person" includes a person or entity that "is a qualified person who prescribed, administered, or dispensed" or is a program planner of COVID-19 Countermeasures and "an official, agent or employee of a person or entity therein described." 42 U.S.C. § 247d-6d(i)(2)(B)(iv) and (v).

30.    The PREP Act defines a "person" as an individual, partnership, corporation, association, entity, or public or private corporation, including a federal, state or local government agency or department." 42 U.S.C. § 247d-6d(i)(5).

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

31.    A "qualified person" is defined as a "licensed health professional or other individual who is authorized to prescribe, administer, or dispense such countermeasures under the law of the State in which the countermeasure was prescribed, administered, or dispensed." 42 U.S.C. § 247d-6d(i)(8).

32.    The term "program planner" includes persons/entities "who supervised or administered a program with respect to the administration, dispensing,... provision, or use of a . . . qualified pandemic product or epidemic product, including a person who has established requirements, provided policy guidance, or supplied technical or scientific advice or assistance or provides a facility to administer or use a covered countermeasure in accordance with a [HHS Secretary's] declaration…" 42 U.S.C. § 247d-6d (i)(6).

33.    A private sector employer or other person can be a "program planner" when it carries out prescribed activities. (*See* Defendants RFJN-Exhibit 2 -March 10, 2020 Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, Federal Register, Vol. 85, No. 52, pg. 15199.) In its letter dated August 14, 2020, HHS stated that a "senior living community" meets the definition of a "program planner" to the extent that it supervises or administers a program with respect to the administration, dispensing, distribution, provision or use of a qualified pandemic or epidemic product, including the provision to a facility to administer or use a covered countermeasure. (*See* Exhibit 6 to Defendants' RFJN.)

34.    The broad definition of "program planner" was also addressed in Advisory Opinion 20-04, issued on October 22, 2020. (*See* Exhibit 7 to Defendants' RFJN.)

35.    Defendants were acting as a "program planner" and "qualified person" as Silverado is a residential care facility for the elderly licensed by the California Department of Public Health, which employs licensed nursing personnel who are authorized to prescribe, administer, or dispense the covered countermeasures set forth

92048504v.1

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  in Plaintiffs Complaint (i.e., PPE including facemasks, gloves, gowns, face shields,

2  N95 masks, and COVID-19 testing) under the laws of the State of California.

3  Importantly, a "private sector employer or community group or other 'person' can be

4  a program planner when it carries out the described activities." 85 Fed. Reg. 15202.

5  HHS has already concluded that a residential care facility is a "program planner.

6  (Defendants' RFJN, Ex. 2, 6.)

7  **VI. THE PREP ACT APPLIES HERE AS THERE IS A CAUSAL**
   **CONNECTION BETWEEN THE USE AND ADMINISTRATION OF**
8  **COVERED COUNTERMEASURES BY DEFENDANTS**

9  36.    The PREP Act "applies to **any claim for loss that has a causal**

10  **relationship with the administration to or use by an individual of a covered**

11  **countermeasure, including a causal relationship with the** . . . distribution . . .

12  **purchase, donation, dispensing, prescribing, administration, licensing, or use of**

13  **such countermeasure**." [Emphasis added.] 42 USC § 247d-6d (a)(2)(B).

14  37.    Here, Plaintiff's claims fall under the PREP Act in that they relate to the

15  covered countermeasures used and allocated by Defendants to prevent or mitigate the

16  spread of COVID-19 as well as their decision making related thereto and concerning

17  the management and operation of their countermeasure program, which includes the

18  use of PPE, medication and testing.  Each cause of action in the Complaint is based

19  on Plaintiff's underlying theory that Defendants failed to exercise ordinary care to

20  keep the premises, residents, and approaches safe by inadequately using,

21  administering, and distributing PPE and other countermeasures at the facility to

22  prevent or mitigate the spread of COVID-19. These are the precise countermeasures

23  mentioned in the PREP Act Declaration issued to address COVID-19.

24  38.    Furthermore, Plaintiff alleges that Defendants failed to prevent Ms.

25  Clack from contracting COVID-19. Such claim by its nature arises out of Defendants'

26  use,     distribution,     procurement     and     administration     of     covered

27  countermeasures/qualified pandemic products used to diagnose, mitigate, prevent,

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  treat or cure the COVID-19 virus, or to limit the harm COVID-19 might otherwise
2  cause thereby triggering application of the PREP Act.

3        39.    In addition, under the PREP Act, the Secretary may specify that liability
4  protections are in effect only for Covered Countermeasures obtained through a
5  particular means of distribution. Section VII of Secretary Azar's initial March 10,
6  2020 Declaration provided that "liability immunity is afforded to Covered Persons
7  only for Recommended Activities that are related to (a) Present or future federal
8  contracts, cooperative agreements, grants, other transactions, interagency agreements,
9  memoranda of understanding, or other federal agreements; or (b) Activities
10 authorized in accordance with public health and medical response of the Authority
11 Having Jurisdiction to prescribe, administer, deliver, distribute or dispense the
12 Covered Countermeasures following a Declaration of an emergency." (See
13 Defendants' RFJN Exhibit 2.)

14       40.    Secretary Azar's Fourth Amended Declaration amended Section VII of
15 the Declaration. This Fourth Amendment provides that "***COVID-19 is an***
16 ***unprecedented global challenge that requires a whole-of-nation response that***
17 ***utilizes federal, state, and local-distribution channels as well as private-distribution***
18 ***channels. Given the broad scale of this pandemic, the Secretary amends [Section***
19 ***VII of] the Declaration to extend PREP Act coverage to additional private-***
20 ***distribution channels*** . . . ." [Emphasis added.] (See Page 12 of Defendants' RFJN-
21 Exhibit 5.)

22       41.    The Fourth Amended Declaration specifically provides that Section VII
23 of the Declaration is amended to extend liability protection under the PREP Act to
24 Covered Persons for Recommended Activities that are related to: "Covered
25 Countermeasures that are:

26          i. Licensed, approved, cleared or authorized by the FDA (or that are
            permitted to be used under an Investigational New Drug Application or
27          an Investigational Device Exemption) under the FD&C Act or PHS Act
            to treat, diagnose, cure, prevent, mitigate, or limit the harm from
28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom; or

ii.  A respiratory protective device approved by NIOSH under 42 CFR part 84, or any successor regulations, that the Secretary determines to be priority for use during a public health emergency declared under section 319 of the PHS Act to prevent, mitigate, or limit the harm from COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom."

(See Pages 22-23 of Defendants' RFJN-Exhibit 5.)

42.     The PREP Act was designed to apply to individuals and entities such as Defendants responding to public health emergencies, and it provides immunity for claims involving "covered countermeasures" under the Act. The broad definition of "administration of a covered countermeasure" set forth in Secretary Azar's declaration encompasses Defendants' plans and decisions with respect to how best to utilize and optimize supplies of PPE and COVID-19 testing kits, and whether and when the use of such countermeasures is appropriate. Moreover, during the relevant time frame to Plaintiffs' claims, Defendants were subject to guidance/directives issued by the Centers for Disease Control and Prevention ("CDC"), Centers for Medicaid and Medicare Services ("CMS"), and the California Department of Public Health ("CDPH"), and was following this applicable public health guidance with respect to the use of PPE and COVID-19 testing. Defendants have thus established that Plaintiffs' claims relating to deficiencies in Defendants' use and administration of PPE and COVID-19 testing fall within the purview of the PREP Act.

## VII.   THIS CASE RAISES IMPORTANT FEDERAL ISSUES GRANTING FEDERAL QUESTION JURISDICTION OVER THE MATTER

43.     The healthcare community's response to this pandemic was coordinated at a national level by HHS, CDC, FDA and CMS, and their issuance of detailed directives to healthcare providers to identify and sequester infected patients, which patients under investigation were to be tested, and the use of personal protective equipment. All cases positive for COVID-19 were reported to the CDC, and initially all testing was conducted solely through the CDC. As such, this case involves issues

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

92048504v.1

1  of national importance related to Defendants' response to a national public health state
2  of emergency, which has not been seen by this country in over a century. Plaintiff's
3  claims in this lawsuit invoke a substantial federal question regarding the extent to
4  which the broad immunities and other protections afforded under the PREP Act apply
5  to Defendants' conduct.

6      44.    Federal courts have a substantial interest in determining the application
7  of the PREP Act in this matter. The PREP Act and its triggering immunity, has been
8  invoked in rare circumstances since it was enacted in 2005. The PREP Act and the
9  HHS Declaration confer a broad and sweeping immunity and other protections to
10 individuals and entities fighting the COVID-19 pandemic during this declared state
11 of emergency. The unique character of the COVID-19 virus as well as its high
12 communicability, required HHS to set forth an expansive Declaration covering broad
13 categories of measures to fight the pandemic including COVID-19 testing and PPE,
14 all of which require interpretation as to the scope and application. Thus, there can be
15 no doubt that there is a substantial and compelling interest for the PREP Act and the
16 Secretary's Declaration to be interpreted by the Federal Courts. Moreover, the Federal
17 Courts are uniquely and properly positioned to interpret Congressional intent and
18 interests of the federal government.

19     45.    Federal jurisdiction is further appropriate as the state action "arises
20 under" federal law and raises a substantial federal issue, actually disputed and
21 substantial. *See Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308
22 (2005). In *Grable*, the Supreme Court set forth a two-step process for determining
23 whether a state law claim "arises under" federal law. First, the state law claim must
24 "necessarily raise a stated federal issue, actually disputed and substantial." *Id*. at 312.
25 Second, federal courts must be able to entertain state law claims "without disturbing
26 a congressionally approved balance of state and federal judicial responsibilities."
27 (*Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable*, 545 U.S., at 313-14)).
28 Under *Grable*, the claims here satisfy both prongs as "arising under" federal law

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

established by the Supreme Court. Further, the federal court in retaining jurisdiction would not disturb the balance of state and federal responsibilities. *Id.*

46.     The PREP Act immunity in this action completely preempts all state law claims, and its applicability poses a "substantial federal issue," which would serve to clarify and determine vital issues of law concerning the public health of the citizens of this country. The District Court, therefore, has original jurisdiction.

47.     Federal jurisdiction over Plaintiff's claims will not disturb federal-state comity principles under *Grable*. As set forth by the Secretary in his Fourth Amended Declaration: "Through the PREP Act, Congress delegated to me the authority to strike the appropriate Federal-state balance with respect to particular Covered Countermeasures through PREP Act declaration." Moreover, the plain, statutory language of the PREP Act expresses a strong federal interest and a clear intention to supersede or preempt state control of the issues raised by Plaintiffs' Complaint. (*See* Defendants' RFJN-Exhibits 30-32.)

48.     Congress did not intend the application of PREP Act immunity to be decided by State courts. As such, this Court would not be disturbing or infringing on any balance of State and Federal judicial responsibilities by retaining jurisdiction. To the contrary, the plain language of the statute seeks to assert broad federal authority over the issues arising under the Act and eliminate all semblance of State Court control. HHS's Fourth Amended Declaration makes explicitly clear that there is exclusive federal jurisdiction over lawsuits involving covered countermeasures, and that this "federal jurisdiction" is essential to the uniform provision of a national response to the COVID-19 pandemic and the PREP Act.

49.     To avoid any doubt on these points, HHS under the new Administration amended the implementing Declaration for the fifth time on January 28, 2021, a sixth time on February 16, 2021, and a seventh time on March 11, 2021, confirming in all three amendments that the PREP Act is a complete preemption statute. *See* 86 Fed. Reg. at 7874, Defendants' RFJN, Exhibits 30, 33, and 34.)"

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

## VIII. JURISDICTION EXISTS PURSUANT TO THE FEDERAL OFFICER REMOVAL STATUTE (28 U.S.C. § 1442(A)(1)

50.     Removal is also proper under 28 U.S.C. § 1442(a)(1), which provides for removal when a defendant is sued for acts undertaken at the direction of a federal officer.

51.     "Unlike the general removal statute, the federal officer removal statute [Section 1442(a)] is to be 'broadly construed' in favor of a federal forum." *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006) [noting the U.S. Supreme Court has held the right of removal is "absolute" for conduct performed under color of federal office, and "has insisted that the policy favoring removal 'should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).'"].

52.     The case is removable pursuant to Section 1442(a) because "(1) Defendants are 'persons' within the meaning of the statute; (2) Plaintiffs' claims are based upon Defendants' conduct 'acting under' the United States, its agencies, or its officers as members of the nation's critical infrastructure; (3) Plaintiffs' claims are 'for, or relating to' an act under color of federal office; and (4) Defendants raise a colorable federal defense to the Plaintiffs' claims." *Stirling v. Minasian*, 955 F.3d 795 (9th Cir. 2020). All requirements for removal under § 1442(a)(1) are satisfied here.

53.     Defendants are "persons" under the federal officer removal statute pursuant to Section 1442(a)(1). *Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1245 (9th Cir. 2017); 1 U.S.C. § 1 [word "person" includes corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals].

54.     The "acting under" requirement, like the federal removal statute overall, is to be "liberally construe[d]" to cover actions that involve "an effort to assist, or to help carry out, the federal supervisor's duties or tasks." *Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1247 (9th Cir. 2017); *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1181 (7th Cir. 2012) quoting *Watson v. Philip Morris Cos., Inc.*, 551 U.S.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

142 (2007); see also *Defender Ass'n of Phila. v. Johnson*, 790 F.3d 457, 468 (3d Cir. 2015).

55.     To satisfy the second requirement ("acting under" a federal officer) "a private persons actions 'must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior.'" *Watson v. Philip Morris Cos.*, 551 U.S. 142, 152 (2007). Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained-of conduct was done at the specific behest of the federal officer or agency." *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 813 (3d Cir. 2016). This requirement, too, is to be liberally construed. *Watson*, 551 U.S., at 152.

56.     "[R]emoval by a 'person acting under' a federal officer must be predicated upon a showing that the acts that form the basis for the state civil or criminal suit were performed pursuant to an officer's direct orders or to comprehensive and detailed regulations. *Cf. Bakalis v. Crossland Savings Bank*, 781 F. Supp. 140, 144-145 (E.D.N.Y. 1991) ('The rule that appears to emerge from the case law is one of 'regulation plus ....'")." *Ryan v. Dow Chemical Co.*, 781 F. Supp. 934, 947 (E.D.N.Y. 1992) "This control requirement can be satisfied by strong government intervention and the threat that a defendant will be sued in state court 'based upon actions taken pursuant to federal direction.'" See *Fung v. Abex, Corp.*, 816 F. Supp. 569, 572 (N.D. Cal. 1992). The "acting under" requirement is met when Defendant is acting pursuant to detailed and ongoing instructions from a federal officer. *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d. 387 (5th Cir. 1998).

57.     Prior to the current national pandemic, regulation of nursing homes was very general in nature, requiring nursing homes to comply with certain quality of care rules and regulations. *See* 42 U.S.C. § 1396r, 42 U.S.C. § 1395i-3 and 42 C.F.R. § 483.1 through 42 C.F.R. § 483.95. The Centers for Medicare and Medicaid Services ("CMS") also delegated oversight responsibility over these facilities to state

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

surveyors, including the California Department of Public Health in California ("CDPH").

58.    However, with the start of the pandemic, everything changed. Silverado–as part of the nation's critical infrastructure–began acting at the specific direction of federal authorities to address the ongoing federal effort and national state of emergency to contain the COVID-19 pandemic and prevent the spread of the virus. All actions taken by Silverado in preparation for and response to the COVID-19 pandemic were taken in that critical role "in an effort to assist, or help carry out, the duties or tasks" as ordered by the CDC and CMS, and CDPH surveyors (per the contract with CMS), and performed pursuant to the direct orders and comprehensive and detailed directives issued by these agencies. Silverado was acting at the direction of the federal government to prevent, treat and contain COVID-19 at the facility and in its care and treatment of Ms. Joe Ann Clack.

59.    Indeed, the federal government enlisted nursing facilities, including assisted living communities in its efforts to fulfill the government's task of ensuring that facilities such as Silverado could assist in the safe transfer and admission of patients between healthcare facilities during an unprecedented national crisis. Thus, Defendants acted "to assist, or to help carry out, the duties or tasks of the federal superior," by helping the federal government "fulfill [these and] other basic governmental tasks" that otherwise "the Government itself would have had to perform." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 152 (2007).

60.    And in January 2020, in response to the pandemic, CMS and the CDC began issuing extremely detailed and pervasive directives to healthcare facilities as members of the nation's critical infrastructure and as part of this coordinated national effort to respond to and contain the COVID-19 pandemic. CDPH surveyors, contracted by CMS, were now supervising skilled nursing facilities with respect to all aspects of infection control and the pandemic response and ensuring strict compliance with the CMS directives. The issuance of in time and evolving guidance in response

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

92048504v.1                    DEFENDANTS' NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT

to a public health emergency was in contrast to the role of CMS before the pandemic. Prior to the pandemic, the focus was on ensuring compliance with existing regulations. However, throughout the pandemic, CMS and CDPH as its agent, specifically instructed facilities to take or not take particular clinical and operational actions in the absence of finding deficiencies that would otherwise require the facility to develop its own plan of correction. These directives included the following:

A.     Early directives to skilled nursing facilities focused on monitoring residents and staff for symptoms and protecting healthcare providers from infection due to contact with symptomatic patients. Facilities were advised to adhere to standards for infection prevention and take steps to prepare for COVID-19.

B.     In January and February, 2020, the CDC issued a number of health updates regarding COVID-19, as well as criteria to guide the evaluation and testing of patients under investigation ("PUI") for COVID-19. Healthcare providers were advised to identify PUI based on clinical features, travel to an affected geographic region and contact with a person confirmed to have tested positive for COVID-19. Persons meeting the PUI criteria were to be tested and healthcare providers were advised to immediately notify their local or state health department in the event they were evaluating a PUI. State health departments in turn were instructed to immediately contact the CDC and complete a PUI case investigation form. Initially COVID-19 testing was conducted solely through the CDC. The CDC also instructed healthcare providers to use standard, contact and airborne precautions when interacting with PUI. (See January 8, 2020, CDC Health Update Outbreak of Pneumonia of Unknown Etiology (PUE) in Wuhan China, a true and correct copy of which is attached to Defendants' RFJN as Exhibit 11; January 17, 2020 CDC Interim Infection Prevention and Control Recommendations for Patients with Known or Patients Under Investigation for 2019 Novel Coronavirus (2019-n-coV) in a Healthcare Setting, a true and correct copy of which is attached to Defendants' RFJN as Exhibit 12; January 24, 2020 CDC Interim Infection Prevention and Control

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

Recommendations for Patients with Known or Patients Under Investigation for 2019 Novel Coronavirus (2019-n-coV) in a Healthcare Setting, a true and correct copy of which is attached to Defendants' RFJN as Exhibit 13.)

    C. On February 1, 2020, the CDC issued an "Update and Interim Guidance on the Outbreak of 2019 Novel Coronavirus" to provide further instruction to healthcare providers regarding 2019-nCoV 2019 (the 2019 Novel Coronavirus, now known as COVID-19). ***This instruction was part of the "ongoing US public health response . . . to identify and contain [the] outbreak and prevent sustained spread of 2019-nCoV in the United States"*** and addressed infection prevention and control specific to 2019-nCoV. [Emphasis added.] The CDC noted that the first United States case was identified on January 21, 2020, and had recently traveled from Wuhan, China. The CDC provided updated directives related to screening of patients in healthcare facilities, and coordination with local health departments for testing and reporting of results. The Update set forth the criteria for assessing patients for COVID-19. Persons with a confirmed or suspected COVID-19 infection who were hospitalized were to be evaluated and cared for in a private room with the door closed, ideally an airborne infection isolation room. (See February 1, 2020 CDC Health Update and Interim Guidance on the Outbreak of 2019 Novel Coronavirus (2019-n-coV), a true and correct copy of which is attached to Defendants' RFJN as Exhibit 14.)

    D. In January and February, the California Department of Public Health ("CDPH") issued a number of All Facilities Letters (AFLs) communicating directives issued by the CDC with respect to identification of PUI and infection prevention and control. (See AFL20-09, 20-10, 20-11, 20-13, and 20-15, true and correct copies of which are attached collectively to Defendants' RFJN as Exhibit 15.)

    E. On February 6, 2020, CMS began preparing healthcare facilities for the national response to the emerging 2019 Novel Coronavirus by issuing a Memorandum to State Survey Agency Directors (i.e., CDPH"). The memo directed

92048504v.1

1  healthcare providers to adhere to CDC directives regarding the use of standard,
2  contact and airborne precautions when interacting with PUI and advised facilities to
3  have PPE measures and protocols in place. (See February 6, 2020 CMS
4  Memorandum QSO 20-09-ALL, a true and correct copy of which is attached to
5  Defendants' RFJN as Exhibit 16.)

6        F.  On February 28, 2020, the CDC issued a Health Update and
7  Interim Guidance on the Outbreak of 2019 Novel Coronavirus (COVID-19) for
8  healthcare providers. The Update noted  to date there had been limited spread in the
9  United States. As of February 26, 2020, there were a total of 61 cases in the country,
10  46 of whom were repatriated person from high-risk settings. The guidance again
11  included criteria to guide the evaluation and testing of patients under investigation
12  ("PUI") for COVID-19. This update further added patients with fever and
13  signs/symptoms of lower respiratory illness without an alternative explanatory
14  diagnosis and no identified source of exposure to the list of those who should be
15  tested. At this time, testing was being performed at state public health laboratories
16  and the CDC. (See February 28, 2020 CDC Health Update and Interim Guidance on
17  Outbreak of Coronavirus Disease 2019 (COVID-19), a true and correct copy of
18  which is attached to Defendants' RFJN as Exhibit 17.)

19        G.  On or about March 3, 2020, the CDC issued "Strategies to
20  Prevent the Spread of COVID-19 in Long-Term Care Facilities (LTCF)." This
21  publication, issued specifically to facilities like Silverado, reiterated that standard,
22  contact and droplet precautions with eye protection were to be used in the care of
23  residents with an undiagnosed respiratory infection. Facilities were advised to make
24  PPE, including facemasks, eye protection, gowns and gloves available immediately
25  outside the resident's room and to post signs on the door or wall outside the room
26  of the residence to clearly describe the type of precautions needed and the required
27  PPE. (See CDC "Strategies to Prevent the Spread of COVID-19 in Long-Term Care
28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

92048504v.1
DEFENDANTS' NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT

1  Facilities (LTCF), a true and correct copy of which is attached to Defendants' RFJN

2  as Exhibit 18.)

3          H.      On March 3, 2020, CDPH communicated, via its All Facilities

4  Letters, information contained in the CDC February 28, 2020 Interim Guidance and

5  the CDC's March 3, 2020 guidance to long term care facilities in AFL 20-17. (See

6  CDPH AFL 20-17, a true and correct copy of which is attached to Defendants' RFJN

7  as Exhibit 19.)

8          I.      On March 4, 2020, CMS issued a Memorandum to State Survey

9  Agency Directors regarding Infection Control and Prevention of Coronavirus

10  Disease 2019 (COVID-19) in nursing homes. The State Survey Agency, as agent

11  for CMS, was also responsible for disseminating the contents of the QSO memo to

12  the States' nursing homes. Facilities were to screen visitors for international travel,

13  symptoms of respiratory infection, and contact with someone with or under

14  investigation for COVID-19, and to restrict entry of visitors who meet these criteria.

15  Facilities were advised to screen staff for the criteria as well, and that staff who meet

16  the criteria should not report to work. The CMS instructions also included directions

17  as to when to transfer a resident with a suspected or confirmed COVID-19 infection

18  to a hospital, and under what conditions a nursing home may accept patients

19  diagnosed with COVID-19. CMS advised facilities to follow the available CDC

20  guidance regarding infection prevention and control. (See CMS Memo QSO 20-14-

21  NH, a true and correct copy of which is attached to Defendants' RFJN as Exhibit

22  20.)

23          J.      On March 8, 2020, the CDC issued further Updated Guidance on

24  Evaluating and Testing Persons for Coronavirus Disease 2019 (COVID-19). The

25  CDC advised that with the expanding spread of COVID-19, additional areas of

26  geographic risk were being identified and the criteria for considering testing were

27  being updated to reflect this spread. The Update indicated that additional COVID-

28  19 testing was becoming available in clinical laboratories and the CDC had been

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

25

specifically directing which persons could be tested.  (See March 8, 2020, the CDC issued further Updated Guidance on Evaluating and Testing Persons for Coronavirus Disease 2019 (COVID-19), a true and correct copy of which is attached to Defendants' RFJN as Exhibit 21.)

K.     On March 10, 2020, the CDC issued Interim Infection Prevention and Control Recommendations for Patients with Suspected or Confirmed Coronavirus Disease 2019 (COVID-19) in Healthcare Settings. The publication reiterated the directive regarding use of standard and transmission-based precautions, and directed healthcare providers who enter the room of a patient with known or suspected COVID-19 to adhere to standard precautions and use a respirator or facemask, gown, gloves and eye protection. The CDC advised that patients with known or suspected COVID-19 should be cared for in a single-person room with the door closed. Airborne infection isolation rooms were to be reserved for patients undergoing aerosol generating procedures. This CDC publication also noted that "[m]ajor distributors in the United States have reported shortages of PPE, specifically N95 respirators, facemask and gowns." Based on a local and regional shortages of PPE, the CDC advised that facemasks were an acceptable alternative when the supply chain of respirators cannot meet the demand. Facilities were instructed to prioritize respirators for situations where respiratory protection is most important. The CDC further advised that in the event of a shortage of medical gowns, gowns should also be prioritized for aerosol generating procedures. (See March 10, 2020, the CDC issued Interim Infection Prevention and Control Recommendations for Patients with Suspected or Confirmed Coronavirus Disease 2019 (COVID-19) in Healthcare Settings a true and correct copy of which is attached to Defendants' RFJN as Exhibit 22.)

L.     On March 10, 2020, CMS issued a Memorandum providing an update regarding the PPE recommendations issued by the CDC on March 10. (See

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

92048504v.1

26
DEFENDANTS' NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT

1  CMS Memo QSO 20-17-ALL a true and correct copy of which is attached to

2  Defendants' RFJN as Exhibit 23.)

3         M.   On March 11, 2020, CDPH issued an All Facilities Letter

4  notifying long-term care facilities of the latest CDC and CMS directives for

5  infection control and prevention and the March 4, 2020 visitation restrictions issued

6  by CMS. (See CDPH AFL 20-22, a true and correct copy of which is attached to

7  Defendants' RFJN as Exhibit 24.)

8         N.   On March 13, 2020, President Trump declared the COVID-19

9  outbreak a national emergency. Following this proclamation, the CDC and CMS

10  took swift action to waive restrictions and expand capacity for healthcare providers

11  and suppliers to coordinate the national response to the nationally declared state of

12  emergency. On March 13, 2020, CMS issued revised infection control and

13  prevention directives for nursing homes to prevent the transmission of COVID-19.

14  In the Memo, facilities were ordered to restrict visitation of all visitors and non-

15  essential health care personnel, cancel communal dining and all group activities,

16  implement active screening of residents and staff for fever and respiratory symptoms,

17  and screen all staff at the beginning of their shift for fever and respiratory symptoms.

18  Facilities were ordered to continue to follow applicable CDC guidelines. (See CMS

19  Memo QSO 20-14-NH a true and correct copy of which is attached to Defendants'

20  RFJN as Exhibit 25.)

21         O.   On March 17, 2020, the CDC issued documents containing

22  instructions to optimize the supply of PPE such as eye protection, isolation gowns,

23  N95 respirators and face masks. For facilities in contingency capacity, the CDC

24  advised that extended use of facemasks should be implemented and that the use of

25  facemasks should be restricted for use by healthcare providers rather than patients

26  for source control. During crisis capacity, facilities were to prioritize facemasks for

27  use during activities where prolonged face-to-face or close contact with a

28  potentially infectious patient is unavoidable, exclude healthcare providers at higher

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

risk for severe illness from COVID-19 from contact with known or suspected COVID-19 patients, use a face shield with no mask, and in settings where facemasks were not available, use homemade masks. In the document pertaining to optimizing the use of N95 respirators, the CDC advised that (1) if the healthcare provider was to remain 6 feet away from a symptomatic patient, no facemask or N95 respirator was required; (2) if the healthcare provider was to be within 3 to 6 feet of a symptomatic patient, a facemask should be used; and (3) if the healthcare provider was to be within 3 feet of a symptomatic patient including providing direct patient care, an N95 respiratory should be used if available. When an N95 respirator was not available, healthcare providers were instructed to wear a surgical mask and exclude healthcare providers at higher risk from severe illness from contact with an infectious patient. (True and correct copies of these documents are attached collectively to Defendants' RFJN as Exhibit 26.)

P.      On March 20, 2020, CMS issued a memo entitled Prioritization of Survey Activities. In the memo, CMS advised that CMS surveyors would be conducting targeted infection control surveys of providers identified in collaboration with the CDC and the HHS Assistant Secretary for Preparedness and Response to ensure providers are implementing actions to protect the health and safety of individuals to respond to the COVID-19 pandemic. A skilled facility would be subject to citation, and fines for failure to implement the directives from CMS. **Thus, the directives from CMS (which followed and instructed facilities to follow the CDC guidance) were truly mandates**, not recommendations. (*See* CMS Memo QSO 20-20-ALL, a true and correct copy of which is attached to Defendants' RFJN as Exhibit 27.)

Q.      On March 21, 2020, the CDC issued further guidance specifically aimed at long term care facilities entitled "Preparing for COVID-19: Long-term Care Facilities Nursing Homes." In this publication, nursing homes were advised to restrict visitation, restrict all volunteers and nonessential healthcare

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

personnel, cancel group activities and communal dining, implement active screening of residents and healthcare providers for fever and respiratory symptoms, and make PPE available in areas where resident care is provided and place a trash can near the exit inside the resident's room so staff can discard PPE prior to exiting. The CDC further directed that "residents with known or suspected COVID-19 do not need to be placed in an airborne infection isolation room (AIIR) but should ideally be placed in a private room with their own bathroom. Room sharing might be necessary if there are multiple residents with known or suspected COVID-19. As roommates of symptomatic residents might already be exposed, it is generally not recommended to separate them in this scenario." (*See* March 21, 2020, CDC publication entitled "Preparing for COVID-19: Long-term Care Facilities Nursing Homes," a true and correct copy of which is attached to Defendants' RFJN as Exhibit 28.)

R.     On April 2, 2020, CMS issued new guidelines directed towards long-term care facilities to "mitigate the spread" of COVID-19.  CMS noted that "[l]ong-term care facilities are a critical component of America's healthcare system…In recent weeks, CMS and CDC, at President Trump's direction have worked together to swiftly issue unprecedented targeted direction to the long-term care facility industry, including a general prohibition of visitors implemented on March 13, 2020, as well as strict infection control and other screening recommendations." CMS and the CDC were providing "critical, needed leadership for the Nation's long-term care facilities to prevent further spread of COVID-19" and that long term care facilities were to immediately implement symptom screening for all persons (residents, staff, visitors, outside healthcare workers, vendors, etc.) entering a long term care facilities. Facilities were ordered to specifically ask about COVID-19 symptoms and to check the temperature of all visitors, as well as limit access points and ensure that all accessible entrances have a screening station. Every resident was also to be assessed for symptoms and have their temperature checked

1   every day, and patients and residents entering facilities screened for COVID-19

2   through testing, if available. CMS ordered facilities to ensure all staff are using

3   appropriate PPE when interacting with residents to the extent PPE is available and

4   per CDC guidance on the conservation of PPE. CMS further directed long term care

5   facility staff to wear a facemask while in the facility for the duration of the state of

6   emergency, to wear full PPE for the care of any resident with known or suspected

7   COVID-19, and if COVID-19 transmission occurs in the facility, healthcare

8   personnel were to wear full PPE in the care of all residents irrespective of COVID-

9   19 diagnosis and symptoms. Further, to avoid transmission within long-term care

10  facilities, the facilities were advised to use separate staffing teams for COVID-19

11  positive residents to the best of their ability, and to work with State and local leaders

12  to designate separate facilities or units within a facility to separate COVID-19

13  negative residents from COVID-19 positive residents and individuals with unknown

14  COVID-19 status. (A true and correct copy of this April 2, 2020 CMS Directive is

15  attached to Defendants' RFJN as Exhibit 29.)

16      61.    Through the federal directives issued by the CDC, CMS, and the CDPH

17  surveyors contracted by CMS, federal authorities were making the operational

18  decisions as it related to the clinical pandemic response in skilled nursing facilities.

19  Facilities were ordered to restrict visitation, cancel communal dining, implement

20  active screening and staff for fever and respiratory symptoms, screen staff at the

21  beginning of their shift for fever and respiratory symptoms and actively take their

22  temperature and document the absence of shortness of breath and any new or change

23  in cough and sore throat. Facilities were instructed on which patients and staff to test

24  for COVID-19, under what circumstances to use and how to conserve PPE, when to

25  permit staff who had COVID-19 to return to work, and how to handle the isolation of

26  residents infected with COVID-19 and those under investigation for COVID-19.

27  These very detailed clinical directives and instructions represented a marked departure

28  from the regulatory structure which existed before the pandemic. Moreover, as

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

92048504v.1     DEFENDANTS' NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT

1    acknowledged by HHS in the Fourth Amended Declaration: "COVID-19 is an

2    unprecedented global challenge that requires a whole-of-nation response that utilizes

3    federal, state and local-distribution channels as well as private-distribution channels

4    [for the provision of covered countermeasures]." (*See* page 12 of Defendants' RFJN

5    Exhibit 5.)

6        62.    At all relevant times, Defendants in the present action, in their

7    preparation and response to the COVID-19 outbreak, were acting at the specific

8    instruction and oversight of the federal government, specifically the HHS, CMS, and

9    CDC in responding to a federal effort to address the ongoing national state of

10   emergency. Defendants' actions were taken "in an effort to assist, or to help carry out,

11   the duties or tasks" dictated by the CDC and CMS in responding to the COVID-19

12   pandemic.

13       63.    Defendants' actions and conduct were taken due to unprecedented and

14   "strong government intervention" which went beyond the "mere auspices of federal

15   direction." *See Fung v. Abex Corp.*, 816 F. Supp. 569, 572 (N.D. Cal. 1992).

16       64.    Defendants were acting specifically at the direction and under the

17   supervision of the United States government with respect to various countermeasures

18   implemented to prevent and treat the COVID-19 virus, including following evolving

19   and specific guidelines from CMS and CDC with respect to: (1) infection control

20   policies and procedures; (2) PPE procurement; (3) PPE allocation; (4) admission and

21   discharge of residents; (5) managing visitors and outside persons, (6) staffing

22   allocation and retention; (7) isolation protocols and management, among multiple

23   additional directives.

24       65.    Defendants' response to the COVID-19 outbreak as it relates to Ms.

25   Clack was directly related to *what they were asked to do* by the federal government.

26   Therefore, Silverado was acting at the direction of the federal government, and

27   jurisdiction exists pursuant to the Federal Officer Removal Statute.

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

92048504v.1

31

DEFENDANTS' NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT

66.    In addition, Defendants can establish a causal nexus between Plaintiffs' claims and the actions they took were under federal direction. *Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387, 398 (5th Cir. 1998). Here, Plaintiffs allege that due to the wrongful acts and omissions of Defendants, Ms. Clack became infected with COVID-19 during her residency at Silverado in March 2020. (**Exhibit A**, pg. 4, 16, 17, 18, 20, 22.) Defendants' response to the COVID-19 pandemic as it relates to the claims of Plaintiff (i.e., the care and treatment of Ms. Clack) was directly related to the orders and directives issued to them as members of the nation's critical infrastructure by the federal government. There is a clear causal nexus between the claims against Defendants and the actions taken by Defendants in that role at the direction of the federal government including, but not limited to, the direction of CDC, CMS, as well as by representatives of CDPH, the State Survey Agency acting under contract with CMS, with respect to the response to the pandemic at the facility and the administration of care to Ms. Clack. The nexus element is therefore met as Defendants were following the orders/directives of CMS with regard to infection control, COVID-19 testing and the use of PPE as part of the nation's critical infrastructure.

67.    Defendants also meet the requirement to assert colorable federal defenses. For purposes of removal, the defense must be "colorable" and need not be "clearly sustainable" as the purpose for the removal statue is to secure the validity of the defense may be tried in federal court. *Willingham v. Morgan*, 395 U.S. 402, 407 (1969). The colorable federal defense element is met where a defendant alleges its actions were justified as the defendant was complying with federal directives with respect to the alleged wrongful acts. See *Venezia v. Robinson*, 16 F.3d 209, 212 (7th Cir. 1994); and *Mesa v. California*, 489 U.S. 121, 126-127. See also *Rural Community Workers Alliance v. Smithfield Foods, Inc.*, No. 5:20-CV-06063-DGK 2020 WL 2145350 (W.D. Mo. May 5, 2020) finding that compliance with federal guidelines aimed to protect employees from COVID-19 exposure served as a defense

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

92048504v.1

to civil liability. Here, Defendants were complying with Federal directives and regulations issued by CMS, the CDC, and CDPH, the CMS contracted state surveyors, in responding to all aspects of the COVID-19 pandemic.

68.     As a colorable defense, Defendants also assert an immunity defense under the PREP Act as set forth at 42 U.S.C. 247d-6d(a)(1), which provides Defendants with immunity, as "covered persons", from "suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of covered countermeasure" provided there has been a declaration issued by the Secretary of HHS with respect to such countermeasure, which was issued on March 10, 2020 with regard to the COVID-19 pandemic, (See Defendants' RFJN Exhibit 2).

69.     Plaintiff's Complaint alleges that Defendants failed to prevent Ms. Clack from contracting COVID-19. Plaintiff's claims relate to Defendants' administration and/or use of covered countermeasures and qualified pandemic products–including PPE, and COVID-19 testing kits, used to diagnose, mitigate, prevent, treat or cure COVID-19 or to limit the harm COVID-19 might otherwise cause–and therefore falls under the PREP Act. Thus, the claims fall under the PREP Act, triggering Defendants' immunity from liability for the claims in this action.

## IX.     ALL DEFENDANTS CONSENT TO REMOVAL

70.     All remaining Defendants in this action join in and consent to this Notice of Removal.

## X.     FILING OF REMOVAL PAPERS

71.     Pursuant to 28 U.S.C. § 1446(d), contemporaneously with the removal of this action to this Court, Defendants have provided written notice of removal to Plaintiffs' Counsel and has filed a Notice to State Court of Removal to Federal Court with the Superior Court of California, County of Los Angeles. A true and correct copy of the Notice to Adverse Party of Removal of Action is attached here as **Exhibit B**.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

92048504v.1

33

DEFENDANTS' NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT

1   A true and correct copy of the Notice to State Court of Removal to Federal Court is

2   attached hereto as **Exhibit C.**

3   **XI.     NO WAIVER**

4          72.     Nothing in this Notice of Removal shall be interpreted as a waiver or

5   relinquishment of Defendants' right to petition to compel arbitration or right to assert

6   any defense or affirmative matter including, without limitation, the defenses of (1)

7   lack of jurisdiction over a person; (2) improper venue; (3) insufficiency of process;

8   (4) insufficiency of service of process; (5) failure to state a claim; or (6) any other

9   procedural or substantive defense available under state or federal law.

10         73.     Removal to federal court is proper in this case and the undersigned

11  counsel for Defendants has read the foregoing and signs this Notice of Removal

12  pursuant to Fed. R. Civ. P. 11, as required by 28 U.S.C. § 1446(a).

13         **WHEREFORE**, Defendants respectfully remove this action from the Superior

14  Court of California, County of Los Angeles, to this Court pursuant to 28 U.S.C. §§

15  1331, 1441, and 1446, and provides Plaintiff of notice of same. Should any question

16  arise as to the propriety of this removal, Defendants respectfully request an

17  opportunity to provide further briefing and oral argument.

18  DATED:  May 5, 2021                      LEWIS BRISBOIS BISGAARD & SMITH LLP

19                                           By: */s/ Rita R. Kanno*
                                                 Rima M. Badawiya
20                                               Lann G. McIntyre
                                                 Rita R. Kanno
21                                               Attorneys for Defendants
                                                 SILVERADO SENIOR LIVING, INC., *et al.*
22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1

## EXHIBIT TABLE OF CONTENTS

2
                                                                              **Pages**

3   EXHIBIT A: Pleadings..................................................................................................

4       1.   Summons ........................................................................ 36-38

5       2.   Complaint ...................................................................... 39-60

6       3.   Civil Case Cover Sheet.................................................. 61-66

7       4.   Notice of Case Assignment ........................................... 67-68

8       5.   Notice of Related Case ................................................. 69-73

9       6.   Notice of Rejection of Electronic Filing ...................... 74

10      7.   Certificate of Mailing ................................................... 75

11      8.   PI General Order ........................................................... 76-83

12      9.   Application and Order for Appointment of Guardian Ad Litem ........ 84-85

13      10.  Application and Order for Appointment of Guardian Ad Litem ...... 86-91

14  EXHIBIT B: Notice to Adverse Party of Removal to Federal Court.................. 92-95

15  EXHIBIT C: Notice to State Court of Removal to Federal Court ...................... 96-99

16

17

18

19

20

21

22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

**EXHIBIT TABLE OF CONTENTS**

# EXHIBIT A

Electronically FILED by Superior Court of California, County of Los Angeles on 03/12/2021 02:38 PM Sherri R. Carter, Executive Officer/Clerk of Court, by M. Mariano,Deputy Clerk

| | **SUM-100** |
|---|---|

# SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

SILVERADO SENIOR LIVING, INC.;
"Additional Parties Attachment form is attached"

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

JOE ANN CLACK, by and through her Guardian ad Litem, ZOANNE
CLACK,

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es:)* Los Angeles Superior Court | CASE NUMBER:<br>*(Número del Caso:)*<br>20STCV47881 |
|---|---|

111 N. Hill Street
Los Angeles, CA 90012

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es:)*
Jody C. Moore, 100 E. Thousand Oaks Blvd., Suite 229, Thousand Oaks, CA 91360 (805) 988-3661

| | Sherri R. Carter Executive Officer / Clerk of Court | | |
|---|---|---|---|
| DATE: 03/12/2021<br>*(Fecha)* | Clerk, by<br>*(Secretario)* | M. Mariano | , Deputy<br>*(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**[SEAL]**

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)           ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)

☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |
|---|---|---|

**Ex. 37**

**SUM-200(A)**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Clack vs. Silverado Senior Living, Inc., et al. | 20STCV47881 |

## INSTRUCTIONS FOR USE

➔ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
➔ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff      ☑ Defendant      ☐ Cross-Complainant      ☐ Cross-Defendant

SILVERADO SENIOR LIVING MANAGEMENT, INC., SUBTENANT 330 NORTH HAYWORTH
AVENUE, LLC; LOREN SHOOK, individually; JASON RUSSO, individually; and Does 1-25, inclusive,

Page  2  of  2

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

Ex. A-38

Electronically FILED by Superior Court of California, County of Los Angeles on 12/15/2020 10:59 AM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Clifton,Deputy Clerk

Case 2:21-cv-03815   Document 1   Filed 05/05/21   Page 39 of 108   Page ID #:39

Assigned for all purposes to: Spring Street Courthouse, Judicial Officer: Stephen Goorvitch

Jody C. Moore, 192601
Gregory L. Johnson, 177889
Joanna A. Hutchins, 307058
**JOHNSON MOORE**
100 E. Thousand Oaks Boulevard, Suite 229
Thousand Oaks, CA 91360
Telephone:     (805) 988-3661
Facsimile:     (805) 494-4777

Attorneys for Plaintiff

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| JOE ANN CLACK, by and through her Guardian ad Litem, ZOANNE CLACK,<br><br>                    Plaintiff,<br><br>vs.<br><br>SILVERADO SENIOR LIVING, INC.; SILVERADO SENIOR LIVING MANAGEMENT, INC., SUBTENANT 330 NORTH HAYWORTH AVENUE, LLC; LOREN SHOOK, individually; JASON RUSSO, individually; and Does 1-25, inclusive,<br><br>                    Defendants. | CASE NO.:  20STCV47881<br><br>**COMPLAINT FOR DAMAGES:**<br>  1.  **Elder Abuse and Neglect (Welf. & Inst. Code, § 15600, *et seq.*)**<br>  2.  **Negligence** |

Plaintiff hereby allege as follows:

Plaintiff JOE ANN CLACK, by and through her Guardian ad Litem, ZOANNE CLACK, hereby bring this action for damages against Defendants SILVERADO SENIOR LIVING, INC.; SILVERADO SENIOR LIVING MANAGEMENT, INC., SUBTENANT 330 NORTH HAYWORTH AVENUE, LLC; LOREN SHOOK, and JASON RUSSO, hereafter collectively referred to as the "SILVERADO DEFENDANTS."

## INTRODUCTION

1.   SILVERADO SENIOR LIVING - BEVERLY PLACE has had one of the worst outbreaks of COVID-19 in any assisted living facility in California: thirteen (13) residents and one (1) staff member are now **dead** from coronavirus; a total of fifty-eight (58) residents have

been infected, along with thirty-nine (39) staff members (97 infections in total); while other COVID-19 related deaths remain hidden from the public.[1] Only one assisted living facility in the state of California (out of 395 facilities) reported higher numbers. This case involves one of the residents who became infected.

2.   JOE ANN CLACK (hereinafter, "MS. CLACK") contracted COVID-19 while living at SILVERADO SENIOR LIVING - BEVERLY PLACE in April 2020. After suffering a lengthy battle with the virus, MS. CLACK is now COVID-free, but the long-term effects of the virus on her overall health and life expectancy are still unknown.

3.   MS. CLACK did not get infected with the coronavirus due to some unforeseen act-of-God. Rather, she became infected because the corporate decision-makers chose to skirt safety and infection control standards.  This case is about the decisions made by the corporate directors of SILVERADO SENIOR LIVING - BEVERLY PLACE that invited the coronavirus to walk through its proverbial front doors (or through the elevator from the parking garage, as the facts will show).

4.   In this case, the corporate directors of an assisted living home for the elderly made the choice to close its doors to family and non-essential personnel, claiming it was too dangerous to allow anyone inside the building other than the residents and staff who care for them. The SILVERADO DEFENDANTS were aware that any person could inadvertently bring the coronavirus into its building and fatally infect its resident population.

- On March 10, 2020 the SILVERADO DEFENDANTS required all visitors at SILVERADO SENIOR LIVING - BEVERLY PLACE to stop at the front desk for screening.

- On March 12, 2020, the SILVERADO DEFENDANTS asked all family and visitors to withhold visits for 2 weeks.

---

[1] *COVID-19 Positive Cases in Adult and Senior Care Facilities*, COVID-19 Information and Resources, <https://www.cdss.ca.gov/inforesources/cdss-programs/community-care-licensing/covid-19-information-and-resources> [as of Dec. 9, 2020].

- On March 13, 2020, the SILVERADO DEFENDANTS explained to family members that "we are putting our residents at significant risk by exposing them to what may come through the front door." The SILVERADO DEFENDANTS limited all visitors until April 1ˢᵗ and further instructed: "do not enter if you have recently traveled to an area with an outbreak of Coronavirus…"

- On March 15,2020, the SILVERADO DEFENDANTS prohibited all family and private duty sitters/resident companions from entering the building. Only SILVERADO SENIOR LIVING - BEVERLY PLACE associates and healthcare professionals were allowed in the building.  The policy prohibiting outside visitors and residents was reiterated on March 16, 2020 and March 17, 2020.

5.   At the same time, those same corporate directors made the choice to admit a (1) new resident (2) who would have to fly on a commercial airplane (3) to Los Angeles from New York, the epicenter of the virus, in the midst of the deadly coronavirus pandemic, (4) without screening, testing, or isolation.  In allowing the new resident to be admitted, the corporate directors also allowed his family (who also flew from London to New York, and then New York to Los Angeles) into the building, when other families were locked out.

- On March 19, 2020, the SILVERADO DEFENDANTS chose to admit a new resident who flew on a commercial flight from Manhattan to Los Angeles and came directly to SILVERADO SENIOR LIVING - BEVERLY PLACE's memory care unit on the third floor, without any period of isolation or quarantine. He was accompanied by a daughter, who also flew on that flight with him, and who had flown to New York from London. Once in the building, he was not quarantined and not tested for the virus.

- On March 20, 2020, he was symptomatic with cough, fever and lethargy.  His symptoms were alarming enough for the facility to call 911, where he was taken to Cedars-Sinai Medical Center. The next day, he tested positive for the coronavirus.

- There were no positive cases at the facility before the admission of this man from New York, hereafter "Patient Zero."

**COMPLAINT FOR DAMAGES**

6.   This decision to admit Patient Zero put at risk each of the existing residents and staff, for no other purpose than to make money. It was undertaken in knowing and conscious disregard of the risk of harm to the residents of SILVERADO SENIOR LIVING - BEVERLY PLACE and its staff.

7.   There was no emergency that required this man to fly from New York to Los Angeles for care (other than a desire to leave the city where the virus numbers were climbing at an alarming rate). There was nothing special about the care being provided at this assisted living facility that could not have been provided elsewhere (or at home). The man's apparent need for care stemmed from "mild dementia" and he was moved into the third floor of SILVERADO SENIOR LIVING - BEVERLY PLACE, which was designated for the most independent and high-functioning residents.

8.   Once he arrived at the facility, the man was not tested for coronavirus and he was not quarantined. By the following day, he had symptoms alarming enough for the facility to call 911, where he was taken to Cedars-Sinai Medical Center. The next day, he tested positive for the coronavirus. There were no positive cases at the facility before the admission of Patient Zero.

9.   The 32-year-old nurse who cared for him on the night of his arrival, was infected and died. Within roughly one month of his admission, 3 residents and one staff member died of COVID-19.

10.   The virus continued to spread, unabated, to at least 97 reported infections, and counting. While the virus was spreading, family and private caregivers remained locked out. They could not see their loved ones or advocate for care.  With limited interactions over Facetime and by phone, and by families communicating with one another, they learned that Defendants intentionally concealed and made misrepresentations to residents and their families regarding their loved one's exposure to the virus, all the while failing to implement proper isolation and screening procedures to protect residents from cross-contamination.  Defendants also intentionally concealed and made misrepresentations to its staff about the need for, and efficacy of, safety and infection control protocols, which in turn left the workers unprotected and lead to further spread.

4

**COMPLAINT FOR DAMAGES**

11. The coronavirus itself poses a threat to life and safety. This case is not about that.  Rather, this case is about corporate executives who were aware of the risk associated with this virus, knew what safety precautions were needed, enforced those safety precautions as to existing residents (banning visitors and private duty nurses) and then willfully chose to ignore their own policies and warnings by admitting someone who by definition should not have been allowed in the front door. He travelled here from a known hot spot without isolating. This is not a story about the unforeseeable, unpreventable tragedies of a deadly virus. Rather, this is a story about the calculated boardroom decision to admit new residents in the midst of the pandemic because it was profitable to do so, and the further decision not to protect residents and staff by implementing proper screening and isolation protocols.

12. It was entirely foreseeable that COVID-19 would spread like wildfire through the halls of SILVERADO SENIOR LIVING - BEVERLY PLACE, given that there were not enough staff to isolate residents who exhibited symptoms or tested positive for the virus. The staffing burden increased when the SILVERADO DEFENDANTS made the decision that private duty caregivers, hired and paid privately by family members, could no longer come in the facility and provide one-on-one care. Without the extra eyes, ears, and hands of family and private caregivers, the entire care burden shifted to the SILVERADO SENIOR LIVING - BEVERLY PLACE staff and they did not increase their staffing levels to meet the need. In fact, while the virus was still spreading through May 2020, several staff members who worked selflessly through the crisis out of a sense of devotion to the seniors they were caring for, were abruptly laid off, likely because they were vocal about the lax safety and infection control protocols.

13. There are many heroes among our Country's caregivers, community workers, and healthcare providers, including the compassionate staff members at SILVERADO SENIOR LIVING - BEVERLY PLACE who continued to care for their residents during a dark and scary time. This case is not about them (although their service is to be commended and their devotion likely saved lives). Rather, this case is about the greedy corporate executives who decided to expose their own residents and staff to the deadly coronavirus in order to make even more profit by admitting new residents during the pandemic, instead of focusing all their resources and

**COMPLAINT FOR DAMAGES**

attention on caring for the residents they already had. They are not heroes. They have profited on the backs of the most vulnerable members of our community, senior citizens and their families, and on the backs of their overworked staff. The executives must be held accountable.

## PARTIES

14. **Plaintiff**: JOE ANN CLACK was born on August 23, 1943. She was at all times relevant herein, an "elder" or "dependent adult" as defined by Welfare & Institutions Code section 15610.23(b), and had physical limitations restricting her ability to carry out normal activities and protect her rights as discussed more fully *infra*. At all times relevant to this action herein, MS. CLACK was a resident of the State of California, County of Los Angeles.

15. **Guardian ad Litem**: JOE ANN CLACK brings this lawsuit by and through her daughter, ZOANNE CLACK, as her Guardian ad Litem. Hereinafter, ZOANNE CLACK will be referred to by her first name, "ZOANNE" in order to avoid confusion. An application for appointment of ZOANNE as JOE ANN CLACK's Guardian ad Litem is filed concurrently herein.

16. **Defendant LICENSEES:** Defendants SILVERADO SENIOR LIVING MANAGEMENT, INC. and SUBTENANT 330 NORTH HAYWORTH AVENUE, LLC ("LICENSEES") are the co-licensees of SILVERADO SENIOR LIVING - BEVERLY PLACE (hereinafter "FACILITY"), a Residential Care Facility for the Elderly ("RCFE") operating at 330 N. Hayworth Avenue, Los Angeles, CA 90048.

17. SILVERADO SENIOR LIVING - BEVERLY PLACE is part of the Silverado brand – a national chain operating facilities in seven states: California, Illinois, Texas, Utah, Virginia, Washington, Wisconsin, twenty of which locations are in California. Silverado boasts "world-class care that is recognized worldwide for an approach blending compassion and clinical excellence"[2] for its residents, promising to provide "appropriate levels of care, amenities and programming to maximize quality of life and provide the highest levels of dignity possible."[3]

---

[2] *Silverado Communities*, Silverado, <https://www.silverado.com/get-started/silverado-communities/> [as of Jun. 26, 2020].
[3] *Are There Limits to the Care Silverado Can Provide,* Silverado, <https://www.silverado.com/memory-care/are-there-limits-to-the-care-silverado-can-provide/>  [as of Jun. 26, 2020].

18. **Defendant SILVERADO SENIOR LIVING, INC.:** Upon information and belief, SILVERADO SENIOR LIVING, INC. is and was at all times relevant herein, the parent corporation of the Silverado enterprise. SILVERADO SENIOR LIVING, INC. exercises control over the management and policies of the facilities in the Silverado chain in California and other states. SILVERADO SENIOR LIVING, INC. controls the provision of administrative, legal services, and risk management services to each of its facilities, including SILVERADO SENIOR LIVING - BEVERLY PLACE.

19. **RCFE LICENSEE Duties**: An RCFE licensee is responsible for compliance with licensing requirements and the organization, management, operation, and control of the RCFE facility.  The general duties of a licensee are set forth in Title 22 of the California Code of Regulations, section 87100 *et seq.*  Certain duties are non-delegable including the responsibility for compliance with regulations and the management and control of the RCFE.  Delegation of authority by a licensee shall not diminish the responsibility of the licensee.  Therefore, even where a licensee delegates operational control to another person or entity, that licensee remains directly liable for management, operation, and control of the facility.  (Cal. Code Regs., tit. 22, § 87205.)

20. RCFEs are licensed and inspected by Department of Social Services (DSS) Community Care Licensing.  RCFEs are non-medical facilities and are not required to have nurses, certified nursing assistants, or doctors on staff.  These facilities are for people who are unable to live by themselves and who need custodial care and services, but do not need 24-hour nursing care.  The types of services usually provided by RCFEs include room and board, activities, transportation, medication administration, monitoring and observation for changes in condition, and ensuring access to medical care.  RCFEs must meet care, safety, and other standards mandated by the State of California in Health & Safety Code section 1569 et seq. and Title 22 of the California Code of Regulations, section 87100 *et seq.*

21. SILVERADO SENIOR LIVING MANAGEMENT, INC. and SUBTENANT 330 NORTH HAYWORTH AVENUE, LLC (as the licenses) were subject to the requirements of federal and state laws and regulations that govern the operation of an RCFE in California.  In

7

connection with its operation of SILVERADO SENIOR LIVING - BEVERLY PLACE, SILVERADO SENIOR LIVING MANAGEMENT, INC. and SUBTENANT 330 NORTH HAYWORTH AVENUE, LLC have a substantial and ongoing caretaking and custodial relationship involving ongoing responsibility for the basic needs of its residents, including MS. CLACK.

22. **Defendant LOREN SHOOK**:  Defendant LOREN SHOOK is and at all relevant times was the President, Chief Executive Officer, and Chairman of the Board at SILVERADO SENIOR LIVING MANAGEMENT, INC. He is also a director and managing agent of SILVERADO SENIOR LIVING, INC.

23. **Defendant JASON RUSSO**:  At all times relevant herein, JASON RUSSO was the Certified Administrator of SILVERADO SENIOR LIVING - BEVERLY PLACE.  An administrator is the person designated by the licensee to act on behalf of the licensee in the overall management of the facility.  (Cal. Code Regs., tit. 22, § 87101(a)(1).) All RCFE facilities are required to have a certified administrator.  (Cal. Code Regs., tit. 22, § 87405.)  That administrator shall have sufficient freedom from other responsibilities and shall be on the premises a sufficient number of hours to permit adequate attention to management and administration of the facility.  The administrator must meet certain minimum qualifications including, but not limited to, knowledge of the requirements for providing care and supervision appropriate to residents and knowledge of and ability to conform to the applicable laws, rules and regulations governing RCFEs.  An administrator has to complete a 40-hour training course which includes classroom instruction on the laws, regulations, policies and procedural standards impacting operations of an RCFE, and more specifically, admission, retention and assessment procedures.  This includes instruction on the laws and regulations governing restricted and prohibited conditions, assessment and documentation of changes of condition, and ensuring that a facility only accepts and retains residents whose needs can be met in the facility.  The administrator has the responsibility and authority to carry out facility policies consistent with the laws and regulations governing RCFEs, including admission, retention and assessment procedures.  Further an administrator of an RCFE has the responsibility to administer the facility

**COMPLAINT FOR DAMAGES**

in accordance with regulations and established policies and programs and to provide or ensure the provision of services to residents with appropriate regard for the resident's physical and mental well-being and needs, including those services identified in the residents' preadmission appraisal.   These are well recognized administrator qualifications and responsibilities, set forth in Cal. Code Regs., tit. 22, §§ 87405 and 87406. According to SILVERADO SENIOR LIVING - BEVERLY PLACE's website, "The Administrator oversees and leads all aspects of the community's operations. From overseeing daily functions, personnel and activities to spending time each day with residents and families, Administrators are truly involved in every part of making sure their community delivers topnotch care."[4]

24. **Unity of Interest:** Defendants are alter-egos of one another and form part of a single enterprise under the Silverado brand. This enterprise is a network of licensees, shell entities and holding companies, and management entities. Defendants, and each of them, are commonly owned and controlled, sharing common officers, directors, and managing agents, including LOREN SHOOK, Matthew McQueen, and Thomas Croal. Defendants make and approve key decisions concerning SILVERADO SENIOR LIVING - BEVERLY PLACE's day-to-day operations, such as policies, staffing levels, employee training, hiring and firing, budgets and related issues, which decisions and directives, on information and belief, were made at the direction of and/or for the benefit of SILVERADO SENIOR LIVING, INC.

25. LOREN SHOOK and JASON RUSSO were actively engaged in day-to-day operations of SILVERADO SENIOR LIVING - BEVERLY PLACE.  They determined staffing ratios and made hiring, firing and training decisions. They were also in charge of allocation of facility resources, and set the facility's annual budget, including the budget for personnel.  They oversaw pre-admission appraisals and deciding whether someone could be admitted or retained in the facility based on licensing regulations, limitations on the types of services provided, limitations on the types of residents who can be admitted or retained, and limitations in numbers and qualifications in staff.

---

[4] *Community Team,* Silverado, <https://www.silverado.com/memory-care/the-community-team/> [as of Dec. 7, 2020].

26. Defendants, and each of them, were jointly responsible to ensure that SILVERADO SENIOR LIVING - BEVERLY PLACE is and was operated in full compliance with federal and state laws and regulations governing operation of a RCFE, and for all aspects of the organization, management, operation and control of SILVERADO SENIOR LIVING - BEVERLY PLACE.

27. Upon information and belief, Defendants siphon funds and assets away from their facilities, including SILVERADO SENIOR LIVING - BEVERLY PLACE, through payment of management fees and other related-party transactions. Defendants indemnify, guarantee and subsidize one another and divert money that should be going to resident care into the pockets of their owners.

28. Injustice will result if the Court does not disregard the fiction of the separate entities. Defendants' fractured ownership and management structure is deliberately constructed in order to shield themselves from liability and to carry out their single enterprise with financial impunity. Defendants deliberately conceal and misrepresent the identity of the responsible ownership, management, and financial interests of SILVERADO SENIOR LIVING - BEVERLY PLACE in order to hide the flow of money and try to evade responsibility for their misconduct. If Defendants are not treated as a single enterprise or alter egos of each other, a severe injustice will result.

29. **Advance Knowledge/Authorization/Ratification:**  Because of the unity of interest and common ownership and control alleged herein, the acts of the LICENSEES were done pursuant to policies, practices, procedures, written or otherwise, established and implemented by and with the advance knowledge, acquiescence or subsequent ratification of SILVERADO SENIOR LIVING, INC., LOREN SHOOK, JASON RUSSO and/or Defendants' officers, directors and managing agents.

30. LOREN SHOOK personally engaged in policy-making at SILVERADO SENIOR LIVING - BEVERLY PLACE including, but not limited to, the visitation ban and the ban on outside private duty companions. On information and belief, LOREN SHOOK also personally adopted, approved and ratified the decision to admit Patient Zero with knowledge he came from an area of outbreak in New York and knowing he was not properly screened and isolated and

knowing his workers were not adequately protected from disease if he brought coronavirus with him across the country.

31. Defendants' officers, directors and managing agents, and each of their tortious acts and omissions, as alleged herein, were done in concert and with each other and pursuant to a common design and agreement to accomplish a particular result, namely maximizing profits from the operation of the FACILITY.  Defendants' officers, directors and managing agents and each of them implemented a business plan to underfund, understaff, undertrain, and under-supervise the staff at the FACILITY.

32. Plaintiff's injuries arise out of the organization, management, operation, and control of SILVERADO SENIOR LIVING - BEVERLY PLACE by Defendants in their capacity as owner/operators/managers.  Defendants, and each of them, therefore share joint responsibility for Plaintiff's injuries.

33. **Doe Allegations:** To the extent any entity, person or company other than the defendants named herein owned, operated, managed, supervised, controlled, maintained, or were otherwise responsible for the business activities of SILVERADO SENIOR LIVING - BEVERLY PLACE, the identity of such persons or entities are unknown to Plaintiff and Plaintiff will seek leave to amend when those identities are ascertained. Plaintiff sues those persons/entities as DOES 1 through 10. Plaintiff is informed and believes, and thereon alleges, that each of the defendants designated as a DOE is responsible in some manner for the events and happenings herein referred to and thereby legally caused the injuries and damages herein alleged. Such DOES would include officers, directors, controlling shareholders, partners, parent and/or sister companies, governing board members, and persons in *de facto* control of healthcare, operators, or employees of SILVERADO SENIOR LIVING - BEVERLY PLACE.

34. On information and belief, DOES 11 through 20 may be staff or contracted personnel of SILVERADO SENIOR LIVING - BEVERLY PLACE, including physicians, physician's assistants, nurse practitioners, licensed nurses, aides, social workers, business office personnel, or other administrative or clinical personnel including persons directly or indirectly responsible for provision of care, persons having made representations or warranties to Plaintiff, and persons

acting in concert with other Defendants. The identities of such persons or entities are unknown to Plaintiff and Plaintiff will seek leave to amend when those identities are ascertained. Plaintiff is informed and believes, and thereon alleges, that each of the defendants designated as a DOE is responsible in some manner for the events and happenings herein referred to and thereby legally caused the injuries and damages herein alleged.

35. On information and belief, DOES 21 through 25 include persons directly or indirectly responsible for provision of care to MS. CLACK, including but not limited to physicians, medical groups, managed care organizations, acute care hospitals, home health agencies, visiting nurses, therapists, or other ancillary care providers who saw, examined, evaluated, observed or treated or failed to treat MS. CLACK and/or persons having made representations or warranties to or from the Department of Social Services, the Department of Public Health, the Long Term Care Ombudsman, Adult Protective Services, Cedars Sinai Medical Center, SILVERADO SENIOR LIVING - BEVERLY PLACE, and/or anyone purporting to act on behalf of or concert with these persons or entities. The identities of such persons or entities are unknown Plaintiff and Plaintiff will seek leave to amend when those identities are ascertained. Plaintiff is informed and believes, and thereon alleges, that each of the defendants designated as DOE is responsible in some manner for the events and happenings herein referred to and thereby legally caused the injuries and damages herein alleged.

## JURISDICTION AND VENUE

36. This Court has jurisdiction over the cause of action asserted.

37. The acts alleged in this complaint occurred in the County of Los Angeles.

38. The Defendants and each of them have sufficient minimum contacts in California based on their residency in California or otherwise intentionally avail themselves of the California market though their provision of services in the County of Los Angeles, so as to render them essentially at home in California and making the exercise of jurisdiction by the California courts consistent with traditional notions of fair play and substantial justice.

39. Venue is proper in the County of Los Angeles under Code of Civil Procedure § 395(a) based on the facts, without limitation, that this Court is a court of competent jurisdiction, that the

**COMPLAINT FOR DAMAGES**

1   defendants reside in the County of Los Angeles, and that all of the events described occurred in

2   the County of Los Angeles.

3                                          **FACTUAL BACKGROUND**

4       A.  **Coronavirus Background**

5       40. On January 20, 2020, the first case of coronavirus infection in the United States appeared.

6   On March 4, 2020, California's Governor, Gavin Newsom, declared a state of emergency in

7   California. On the same day, the Los Angeles County Board of Supervisors and the Los Angeles

8   County Department of Public Health similarly declared a local and public health emergency in

9   the County of Los Angeles. On March 7, 2020, Governor Andrew Cuomo declared a State of

10  Emergency in the state of New York.

11      41. It quickly became known that the elderly, and particularly those with underlying health

12  problems were most vulnerable to the coronavirus. The CDC, CDPH, and CDSS all put forth

13  requirements, and guidelines for nursing homes and assisted living providers/RCFEs to promptly

14  take reasonable measures to protect their patients from exposure to the coronavirus. Such

15  measures include testing of residents and employees, restricting visitors, requiring employees to

16  use face masks, gloves, and gowns, and isolating employees and residents who are suspected or

17  known carriers of the virus.

18      42. Media coverage of the coronavirus pandemic was everywhere, and certain parts of the

19  country and the world were thrust to the forefront. Starting in Wuhan, China, virus coverage

20  quickly shifted to Italy, where the entire country was placed on lockdown on March 9 due to an

21  exploding number of cases that left Italy's hospitals in a state of wartime triage.[5]

22      43. The next global hotspot to emerge was New York.  On March 10, New York ordered a

23  one-mile radius containment zone in Westchester County's New Rochelle – less than 20 miles

24  from Manhattan. On March 16, 2020, Governor Cuomo issued an executive order closing all

25  schools statewide, limiting recreational and social gatherings to 50 people, and closing

26  restaurants, bars, movie theaters, gyms and casinos. On March 17, 2020, Mayor Bill de Blasio

27  _____

28  [5] Mounk, *The Extraordinary Decisions Facing Italian Doctors,* The Atlantic (Mar. 11, 2020)
    <https://www.theatlantic.com/ideas/archive/2020/03/who-gets-hospital-bed/607807/> [as of Nov. 19, 2020].

announced that the city should prepare for a possible shelter-in-place order. By March 18, the number of cases in New York statewide had spiked to 4,152. On March 19, Mayor Bill de Blasio reported "an explosion of cases here in New York City," adding that the city has been ramping up its testing in recent days.[6] On March 20, Cuomo ordered all nonessential businesses closed statewide.

**B.  COVID-19 Precautions at SILVERADO SENIOR LIVING - BEVERLY PLACE**

44. Meanwhile, at SILVERADO SENIOR LIVING - BEVERLY PLACE, Defendants began making representations that they too were taking the virus seriously and implementing precautions as recommended by the CDC and CDPH.  On March 14, 2020, residents at SILVERADO SENIOR LIVING - BEVERLY PLACE received a mass email from JASON RUSSO limiting visitors and requiring strict screening for family members. The message stated:

> [T]hrough an enormous abundance of caution for our residents that our families postpone all visits for the next 2 weeks unless it is absolutely necessary. **We are putting our residents at significant risk by exposing them to what may come through the front door with a visit.** Our goal is to reduce exposure and we can only do that if we postpone the visit. I do appeal to your common sense and ask that you think first about the safety of your loved one and all the residents at Beverly Place.

> (emphasis added)

45. The next day, March 15, 2020, JASON RUSSO sent out another email stating that private duty companions hired by families were henceforth restricted.

**C.  Admission of Patient Zero**

46. Meanwhile, although SILVERADO SENIOR LIVING - BEVERLY PLACE closed its doors to family and friends from visiting, as of March 19, 2020, Defendants were still allowing the admission of new residents.

47. On March 19, 2020, Patient Zero was flown in from New York City and admitted to the independent wing of the facility. No isolation measures were implemented and Patient Zero was allowed to roam freely throughout the facility unattended.

---

[6] Feuer, et al., *Coronavirus: NYC has 3,615 Confirmed Cases, Including an Inmate at Rikers Island, Mayor de Blasio Says*, CNBC (Mar. 19, 2020 <https://www.cnbc.com/2020/03/19/new-york-city-has-3615-confirmed-coronavirus-cases-including-an-inmate-at-rikers-island-mayor-de-blasio-says.html> [as of Nov. 19, 2020].

48. The next day, March 20, 2020, Patient Zero was sent to the hospital due to his symptoms. The following day, he tested positive for COVID-19, unbeknownst to anyone else at the facility.

49. SILVERADO DEFENDANTS concealed Patient Zero's condition, and the fact that Patient Zero had exposed other residents at the facility. Meanwhile, MR. RUSSO and MR. SHOOK continued to reassure residents and their families that they were doing "everything in their power" to manage the crisis and keep residents safe. In a letter to families of SILVERADO SENIOR LIVING - BEVERLY PLACE residents dated March 21, 2020 and emailed around 7:14 PM, LOREN SHOOK acknowledged: "We fully understand that in light of an asymptomatic incubation period and the presence of mild and asymptomatic disease already endemic in the larger community, COVID-19 will get into our memory care communities." When he wrote this, he already knew Patient Zero was positive, but he did not share that. He continues, "we have and will be taking significant precautions and continuing to make adjustments to do all we can to limit our resident's exposure and flatten the curve." The next morning, on March 22, 2020 at approximately 9AM, MR. SHOOK distributed an email again to the families of SILVERADO SENIOR LIVING - BEVERLY PLACE, stating, "As we anticipated with my last communication, we learned tonight that a resident who recently moved into The Loft has tested positive for Covid-19". The letter falsely claims that Patient Zero was confined to his room since he was admitted to the facility.

50. In the days and weeks that followed, at least 58 residents and 39 employees have since come down with the virus, at least fourteen of whom have died.[7]

**D. MS. CLACK**

51. MS. CLACK was admitted to SILVERADO SENIOR LIVING - BEVERLY PLACE on February 22, 2020. At all times relevant herein, she suffered from dementia.

52. On or about April 2, 2020, MS. CLACK started exhibiting symptoms consistent with COVID-19 – including coughing, shortness of breath, and low oxygen levels.

---

[7] *COVID-19 Positive Cases in Adult and Senior Care Facilities*, COVID-19 Information and Resources, <https://www.cdss.ca.gov/inforesources/cdss-programs/community-care-licensing/covid-19-information-and-resources> [as of Nov. 19, 2020].

**COMPLAINT FOR DAMAGES**

**Ex. A-53**

53. By the following day, MS. CLACK's condition had declined even further. Her oxygen levels were at 80%, she was extremely weak, and her chest x-ray results showed indications of pneumonia.

54. MS. CLACK was taken to Cedars Sinai Medical Center, where she was administered oxygen and treated with hydroxychloroquine. However, she continued to decline over the next few days, and her condition became so dire that her doctor advised ZOANNE she was unlikely to survive. ZOANNE was granted end of life privileges to visit her mother and started making funeral arrangements.

55. MS. CLACK remained hospitalized at Cedars Sinai Medical Center for the next few weeks, as she battled the virus which ravaged her system. During that time, she suffered greatly. MS. CLACK had to undergo an emergency thoracentesis and chest tube placement to empty fluid from her lung, as well as a blood infusion to combat the low platelet levels that resulted from her COVID treatment.

56. Miraculously, MS. CLACK survived. By May 22, 2020, she had recovered sufficiently to be transferred to a rehabilitation facility. However, she continues to suffer the long-term effects of her illness to this day.

## FIRST CAUSE OF ACTION

**(Elder Abuse and Neglect by Plaintiff JOE ANN CLACK, by and through her Guardian ad Litem, ZOANNE CLACK, as against all Defendants)**

57. Plaintiff hereby incorporates by reference Paragraph 1 through 56 of this Complaint as though fully set forth herein.

58. **Elder:** MS. CLACK, at all relevant times, was over the age of 65 and thus an "elder" as that term is defined in Welfare and Institutions Code § 15610.27.

59. **Substantial Caretaking and Custodial Relationship:** By virtue of her residence and reliance on staff for assistance with all activities of daily living, Defendants, and each of them, were in a substantial caretaking and custodial relationship with MS. CLACK while she was a resident at SILVERADO SENIOR LIVING - BEVERLY PLACE. As such, Defendants, and

**COMPLAINT FOR DAMAGES**

each of them, had responsibility for meeting MS. CLACK's basic needs including protection from the health and safety hazard posed by COVID-19.

60. **Duties:** Defendants, and each of them, owed a duty to MS. CLACK to provide care and services that met her needs and were in accordance with the laws and regulations governing RCFEs, including but not limited to:

(a) The duty to accept and retain only residents for whom they could provide adequate care (Cal. Code Regs., tit. 22, §§ 87582, 87589(a)(4));

(b) The duty to reappraise residents who have significant physical and mental changes of condition (Cal. Code Regs., tit. 22, § 87587(a));

(c) The duty to notify family and physician of significant changes in a resident's health and document those changes (Cal. Code Regs., tit. 22, §§ 87572(a)(8), 87587(b) and (c));

(d) The duty to maintain complete and current records of each resident (Cal. Code Regs., tit. 22, § 87506);

(e) The duty to provide adequate staffing to meet residents' needs (Cal. Code Regs., tit. 22, § 87565(a));

(f) The duty to provide adequate assistance and care to meet residents' needs as identified in the pre-admission appraisal and for other basic services including safe accommodations and regular observation of physical and mental conditions (Cal. Code Regs., tit. 22, § 87578(a), 87590(d) and (f));

(g) The duty to timely transfer residents to a higher level of care when they can no longer receive adequate care at a residential care facility (Cal. Code Regs., tit. 22, § 87589(a)(4));

(h) The duty to regularly observe residents for changes in physical, mental, emotional, and social functions and to provide appropriate assistance when such observation reveals unmet needs (Cal. Code Regs., tit. 22, § 87591);

(i) The duty to treat residents at all times as individuals, with dignity and respect (Cal. Code Regs., tit. 22, § 87572(a));

17

**COMPLAINT FOR DAMAGES**

(j)  The duty to provide and maintain safe accommodations (Cal. Code Regs., tit. 22, §§ 87572(b), 87577(d));

(k)  The duty to arrange for appropriate medical care to meet the conditions and needs of residents, including emergency care (Cal. Code Regs., tit. 22, §§ 87575(a)(1), (a)(2), and (f)); and

(l)  The duty to immediately call 911 if an injury or other circumstance has resulted in an imminent threat to a resident's health (Cal. Code Regs., tit. 22, § 87575(g)).

61. **Neglect:** Defendants, and each of them, committed elder neglect as defined in the Elder Abuse and Dependent Adult Civil Protection Act (Welfare and Institutions Code section 15610.57) by failing to protect MS. CLACK from health and safety hazards.  Defendants failed to protect MS. CLACK from health and safety hazards when they allowed admission of a new resident, who would fly here on a commercial airplane from a location known to have an outbreak of COVID-19, to enter the facility without implementing appropriate isolation, screening, or protective measures.

62. **Reckless conduct and conduct undertaken in conscious disregard of a high probability of injury:** The conduct of Defendants was reckless and undertaken in conscious disregard of the high probability of injury to MS. CLACK.  The misconduct and neglect described herein was undertaken in blatant disregard of recommendations by the CDC, the CDSS, health officials and their own internal recommendations, demonstrating a callous indifference to the outcome.  The breaches were undertaken in an environment (i.e. care for vulnerable disabled and elderly persons) where everyone involved in caring for these folks knows of the high risk of death this disease poses to the elderly and immunocompromised.

63. Defendants' willful failure to protect MS. CLACK from health and safety hazards, as described, constitutes recklessness, malice, oppression, and/or fraud within the meaning of Welfare & Institutions Code § 15657.

64. **Fraud in the Commission of Elder Neglect:** Defendants concealed the fact that new residents would be admitted after the facility shut down to families and visitors. Defendants also concealed Patient Zero's condition from their staff, residents, and residents' families and in

1    doing so concealed the fact that they had been exposed to the virus, all the while communicating

2    that they were taking the virus seriously and taking precautions to protect residents from its

3    spread. MS. CLACK and her family had no way of knowing that Patient Zero was being flown

4    in, or of his medical history and symptoms. Rather, they relied on Defendants to keep MS.

5    CLACK and the other residents safe.  Had Defendants reported to MS. CLACK and her family

6    members, they would have been in the position to make alternative arrangements to provide a

7    safe and exposure-free environment for MS. CLACK.

8        65. **Corporate Directives and Understaffing:** Defendants engaged in direct neglect by

9    making a conscious choice to admit Patient Zero, as described herein. Defendants also engaged

10   in direct neglect by making a choice to understaff the facility, in both quantity and quality of

11   nursing personnel.  The decision to understaff was made at the management level by the

12   SILVERADO DEFENDANTS in order to increase the profitability of the RCFE, in conscious

13   disregard of resident care needs.  Defendants, together with their directors, officers and

14   managing agents, conceived of and implemented a plan to increase business profits at the

15   expense of residents like MS. CLACK, and other FACILITY residents.  Integral to this plan

16   was the practice and pattern of Defendants continuing to admit new residents, but not increasing

17   staffing levels to implement safety and infection protocols and keep existing and new residents

18   safe from the virus.  DEFENDANTS instead chose to staff the facility with an insufficient

19   number of care personnel, many of whom were not properly trained nor given the proper

20   protective equipment and sanitation supplies to keep themselves and the residents safe.  The

21   understaffing and lack of training and supplies was designed to reduce labor costs, equipment

22   and supply costs, and to increase profits, and resulted in the neglect of many residents of the

23   facilities including, MS. CLACK.  This corporate policy to not maintain sufficient staffing, not

24   provide adequate training, and not to provide equipment and supplies for infection control, as

25   required by law, was developed and implemented with the conscious disregard for the

26   likelihood of physical harm and injury to those who it is in the business to protect, including

27   MS. CLACK, who did in fact suffer as a direct consequence of Defendants' proprietary

28   interests, which it placed above that of her and other residents.

**COMPLAINT FOR DAMAGES**

66. As a direct and proximate result of DEFENDANTS' misconduct, MS. CLACK contracted the coronavirus, and she needlessly suffered great harm and injury.

67. As a proximate result of the abuse and neglect of MS. CLACK by Defendants, Plaintiff was caused to incur medical expenses and other related expenses, the full nature, extent and amount of which are not yet known to Plaintiff, and leave is requested to amend this Complaint when the same are ascertained to conform to proof at the time of the trial.

68. As a proximate result of the abuse and neglect of MS. CLACK by Defendants, MS. CLACK suffered fear, anxiety, humiliation, physical pain and discomfort, and emotional distress, all to her general damage in a sum to be established.

69. By the conduct, acts and omissions of Defendants, as alleged above, they are guilty of recklessness, fraud, oppression, and/or malice.  The specific facts set forth above show a disregard of the high probability that MS. CLACK would be injured.  In addition to special damages, Plaintiff is therefore entitled to an award of the reasonable attorney's fees and costs incurred in prosecuting this case as well as MS. CLACK's pain and suffering and punitive damages pursuant to Welfare & Institutions Code section 15657 and Civil Code section 3294.

70. By the conduct, acts and omissions of Defendants, as alleged above, they have engaged in unfair business practices directed at the elderly.  MS. CLACK is therefore entitled to treble damages pursuant to Civil Code section 3345.

## SECOND CAUSE OF ACTION

**(Negligence by Plaintiff JOE ANN CLACK, by and through her Guardian ad Litem, ZOANNE CLACK, as against all Defendants)**

71. Plaintiff incorporates herein by reference paragraphs 1 through 70 of this Complaint as though fully set forth.

72. The SILVERADO DEFENDANTS owed a duty of care to MS. CLACK to act reasonably in the discharge of their duties including but not limited to hire, retain, and train sufficient staff to provide her with necessary care and services based on assessment and recognition of her individualized care needs; a duty to protect her from health and safety hazards;

20

a duty to observe and report changes of condition to family and physicians; and a duty to ensure she does not suffer needlessly.

73. The SILVERADO DEFENDANTS breached their duties as described herein.

74. As a proximate result of the negligent conduct as alleged against SILVERADO DEFENDANTS and breaches of the duty owed to plaintiff and decedent, and breaches of the standard of care owed, MS. CLACK suffered grave personal injury and needless suffering, as described herein, as well as special damages, according to proof.

75. Pleading in the alternative, as a proximate result of the wrongful and neglectful conduct of the SILVERADO DEFENDANTS, including but not limited to the allegations of neglect, and acts or omissions undertaken with recklessness, malice, oppression and/or fraud, MS. CLACK suffered grave personal injury and needless suffering, as described herein, as well as special damages, according to proof.

## **RELIEF REQUESTED**

On the First Cause of Action: Elder Abuse and Neglect

1.  For general damages in an amount in excess of the minimum jurisdiction of this court;

2.  For special damages including past hospital, medical, professional and incidental expenses, according to proof;

3.   For attorney's fees and costs pursuant to Welfare & Institutions Code § 15657 and according to proof;

4.  For exemplary damages pursuant to Welfare & Institutions Code § 15657 and Civil Code § 3294;

5.  For treble damages pursuant to Civil Code § 3345;

On the Second Cause of Action: Negligence

1.  For general damages in an amount in excess of the minimum jurisdiction of this court;

2.  For special damages including past hospital, medical, professional and incidental expenses, according to proof;

///

///

**COMPLAINT FOR DAMAGES**

**Ex. A-59**

1     <u>On all counts</u>

2         1.   For costs of suit;

3         2.   Whatever further relief the court may find just and proper.

4

5     Dated: December 15, 2020                    JOHNSON MOORE

6

7                                            By: _____

8                                                Jody C. Moore
                                                 Joanna A. Hutchins
                                                 Attorneys for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT FOR DAMAGES**

CM-010

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Jody C. Moore Esq.   192601<br>JOHNSON MOORE<br>100 E. Thousand Oaks Blvd., Suite 229<br>Thousand Oaks, California 91360<br>TELEPHONE NO.: (805) 988-3661   FAX NO.: (805) 494-4777<br>ATTORNEY FOR *(Name):* Plaintiffs | **FOR COURT USE ONLY** |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 N. Hill St.
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, 90012
BRANCH NAME: Mosk

CASE NAME:
Clack vs. Silverado Senior Living, Inc. et al.

| **CIVIL CASE COVER SHEET** | | **Complex Case Designation** | CASE NUMBER:<br>20STCV47881 |
|---|---|---|---|
| ✓ **Unlimited**<br>(Amount<br>demanded<br>exceeds $25,000) | **Limited**<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ **Counter**  ☐ **Joinder**<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br><br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| **Auto Tort** | **Contract** | **Provisionally Complex Civil Litigation**<br>**(Cal. Rules of Court, rules 3.400–3.403)** |
|---|---|---|
| ☐ Auto (22) | ☐ Breach of contract/warranty (06) | ☐ Antitrust/Trade regulation (03) |
| ☐ Uninsured motorist (46) | ☐ Rule 3.740 collections (09) | ☐ Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property** | ☐ Other collections (09) | ☐ Mass tort (40) |
| **Damage/Wrongful Death) Tort** | ☐ Insurance coverage (18) | ☐ Securities litigation (28) |
| ☐ Asbestos (04) | ☐ Other contract (37) | ☐ Environmental/Toxic tort (30) |
| ☐ Product liability (24) | **Real Property** | ☐ Insurance coverage claims arising from the |
| ☐ Medical malpractice (45) | ☐ Eminent domain/Inverse | above listed provisionally complex case |
| ✓ Other PI/PD/WD (23) | condemnation (14) | types (41) |
| **Non-PI/PD/WD (Other) Tort** | ☐ Wrongful eviction (33) | **Enforcement of Judgment** |
| ☐ Business tort/unfair business practice (07) | ☐ Other real property (26) | ☐ Enforcement of judgment (20) |
| ☐ Civil rights (08) | **Unlawful Detainer** | **Miscellaneous Civil Complaint** |
| ☐ Defamation (13) | ☐ Commercial (31) | ☐ RICO (27) |
| ☐ Fraud (16) | ☐ Residential (32) | ☐ Other complaint *(not specified above)* (42) |
| ☐ Intellectual property (19) | ☐ Drugs (38) | **Miscellaneous Civil Petition** |
| ☐ Professional negligence (25) | **Judicial Review** | ☐ Partnership and corporate governance (21) |
| ☐ Other non-PI/PD/WD tort (35) | ☐ Asset forfeiture (05) | ☐ Other petition *(not specified above)* (43) |
| **Employment** | ☐ Petition re: arbitration award (11) | |
| ☐ Wrongful termination (36) | ☐ Writ of mandate (02) | |
| ☐ Other employment (15) | ☐ Other judicial review (39) | |

2. This case ☐ is ✓ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ✓ monetary   b. ☐ nonmonetary; declaratory or injunctive relief   c. ✓ punitive

4. Number of causes of action *(specify):* 2

5. This case ☐ is ✓ is not a class action suit.

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: December 15, 2020

Joanna A. Hutchins
(TYPE OR PRINT NAME)                          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courtinfo.ca.gov* |

Ex. A-061

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
  Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
  Uninsured Motorist (46) (*if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto*)

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
  Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
      Wrongful Death
  Product Liability (*not asbestos or
    toxic/environmental*) (24)
  Medical Malpractice (45)
    Medical Malpractice–
      Physicians & Surgeons
    Other Professional Health Care
      Malpractice
  Other PI/PD/WD (23)
    Premises Liability (e.g., slip
      and fall)
    Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
    Intentional Infliction of
      Emotional Distress
    Negligent Infliction of
      Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
  Business Tort/Unfair Business
    Practice (07)
  Civil Rights (e.g., discrimination,
    false arrest) (*not civil
    harassment*) (08)
  Defamation (e.g., slander, libel)
    (13)
  Fraud (16)
  Intellectual Property (19)
  Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
      (*not medical or legal*)
  Other Non-PI/PD/WD Tort (35)

**Employment**
  Wrongful Termination (36)
  Other Employment (15)

**Contract**
  Breach of Contract/Warranty (06)
    Breach of Rental/Lease
      Contract (*not unlawful detainer
      or wrongful eviction*)
    Contract/Warranty Breach–Seller
      Plaintiff (*not fraud or negligence*)
    Negligent Breach of Contract/
      Warranty
    Other Breach of Contract/Warranty
  Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
      Case
  Insurance Coverage (*not provisionally
    complex*) (18)
    Auto Subrogation
    Other Coverage
  Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
  Eminent Domain/Inverse
    Condemnation (14)
  Wrongful Eviction (33)
  Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property (*not eminent
      domain, landlord/tenant, or
      foreclosure*)

**Unlawful Detainer**
  Commercial (31)
  Residential (32)
  Drugs (38) (*if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential*)

**Judicial Review**
  Asset Forfeiture (05)
  Petition Re: Arbitration Award (11)
  Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
      Case Matter
    Writ–Other Limited Court Case
      Review
  Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
  Antitrust/Trade Regulation (03)
  Construction Defect (10)
  Claims Involving Mass Tort (40)
  Securities Litigation (28)
  Environmental/Toxic Tort (30)
  Insurance Coverage Claims
    (*arising from provisionally complex
    case type listed above*) (41)

**Enforcement of Judgment**
  Enforcement of Judgment (20)
    Abstract of Judgment (Out of
      County)
    Confession of Judgment (*non-
      domestic relations*)
    Sister State Judgment
    Administrative Agency Award
      (*not unpaid taxes*)
    Petition/Certification of Entry of
      Judgment on Unpaid Taxes
    Other Enforcement of Judgment
      Case

**Miscellaneous Civil Complaint**
  RICO (27)
  Other Complaint (*not specified
    above*) (42)
    Declaratory Relief Only
    Injunctive Relief Only (*non-
      harassment*)
    Mechanics Lien
    Other Commercial Complaint
      Case (*non-tort/non-complex*)
    Other Civil Complaint
      (*non-tort/non-complex*)

**Miscellaneous Civil Petition**
  Partnership and Corporate
    Governance (21)
  Other Petition (*not specified
    above*) (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
      Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
      Claim
    Other Civil Petition

**CIVIL CASE COVER SHEET**

Ex. A-062

| SHORT TITLE: Clack vs. Silverado Senior Living, Inc., et al. | CASE NUMBER |
|---|---|

# CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.**

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

---

### Applicable Reasons for Choosing Court Filing Location (Column C)

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.

7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| **Other Personal Injury/Property Damage/Wrongful Death Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 1, 11 |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 1, 11 |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1, 4, 11 |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1, 4, 11 |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1, 4, 11 |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1, 4, 11 |
| | | ☑ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |

---

LASC CIV 109 Rev. 12/18
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 1 of 4
Ex. A-063

| SHORT TITLE: Clack vs. Silverado Senior Living, Inc., et al. | | CASE NUMBER | |

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1, 2, 3 |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ A6109  Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 5, 6, 11 |
| | | ☐ A6012  Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ A6034  Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ A6031  Tortious Interference | 1, 2, 3, 5 |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation          Number of parcels_____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2, 6 |
| | | ☐ A6032  Quiet Title | 2, 6 |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2, 6, 11 |

SHORT TITLE: Clack vs. Silverado Senior Living, Inc., et al.    CASE NUMBER

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2, 8 |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2 |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort<br>Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims<br>from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement<br>of Judgment (20) | ☐ A6141  Sister State Judgment | 2, 5, 11 |
| | | ☐ A6160  Abstract of Judgment | 2, 6 |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2, 9 |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2, 8 |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints<br>(Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1, 2, 8 |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1, 2, 8 |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation<br>Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not<br>Specified Above) (43) | ☐ A6121  Civil Harassment With Damages | 2, 3, 9 |
| | | ☐ A6123  Workplace Harassment With Damages | 2, 3, 9 |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case With Damages | 2, 3, 9 |
| | | ☐ A6190  Election Contest | 2 |
| | | ☐ A6110  Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ A6100  Other Civil Petition | 2, 9 |

| SHORT TITLE: Clack vs. Silverado Senior Living, Inc., et al. | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address**: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON: | ADDRESS: |
|---|---|
| ☐ 1. ☐ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☑ 11. | 330 N. Hayworth Avenue |

| CITY: | STATE: | ZIP CODE: |
|---|---|---|
| Los Angeles | CA | 90048 |

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the __Central__ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: __December 15, 2020__

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LASC CIV 109 Rev. 12/18
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 4 of 4
Ex. A-066

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Spring Street Courthouse<br>312 North Spring Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>12/15/2020<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ R. Clifton _____ Deputy |
| **NOTICE OF CASE ASSIGNMENT**<br><br>**UNLIMITED CIVIL CASE** | |
| **Your case is assigned for all purposes to the judicial officer indicated below.** | CASE NUMBER:<br>20STCV47881 |

## THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|---|
| ✔ | Stephen I. Goorvitch | 32 | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

on 12/16/2020
(Date)

LACIV 190 (Rev 6/18)
LASC Approved 05/06

Sherri R. Carter, Executive Officer / Clerk of Court

By R. Clifton _____, Deputy Clerk

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**          Ex. A-67

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007.  They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date.  All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference.  These matters may be heard and resolved at this conference.  At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules.  Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status.  If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**          **Ex. A-68**

CM-015

Electronically Received 12/23/2020 03:08 PM

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Jody C. Moore Esq., SBN 192601
JOHNSON MOORE
100  E. Thousand Oaks Blvd., Suite 229
Thousand Oaks, California 91360
TELEPHONE NO.: (805) 988-3661     FAX NO. *(Optional):* (805) 494-4777
E-MAIL ADDRESS *(Optional):*  Jody@johnson-moore.com
ATTORNEY FOR *(Name):*   Plaintiffs

**FOR COURT USE ONLY**

**FILED**
Superior Court of California
County of Los Angeles

**12/23/2020**

Sherri R. Carter, Executive Officer / Clerk of Court

By: _____ R. Mendoza _____ Deputy

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  LOS ANGELES
STREET ADDRESS: 312 North Spring Street,
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, 90012
BRANCH NAME: Spring Street Courthouse

PLAINTIFF/PETITIONER:  Joe Ann Clack, et al.

DEFENDANT/RESPONDENT:  Silverado Senior Living, Inc. et al.

**NOTICE OF RELATED CASE**

CASE NUMBER:
20STCV47881

JUDICIAL OFFICER:
Hon. Stephen I. Goorvitch

DEPT.:
32

*Identify, in chronological order according to date of filing, all cases related to the case referenced above.*

1.  a.  Title: Apothakervs. Silverado Senior Living, Inc. et al.

    b.  Case number:  20STCV47127

    c.  Court: [✓]  same as above

        [ ]  other state or federal court *(name and address):*

    d.  Department:  31

    e.  Case type: [ ]  limited civil [✓] unlimited civil [ ]  probate [ ]  family law [ ]  other *(specify):*

    f.  Filing date:  December 9, 2020

    g.  Has this case been designated or determined as "complex?" [ ]  Yes [✓]  No

    h.  Relationship of this case to the case referenced above *(check all that apply):*

        [✓]  involves the same parties and is based on the same or similar claims.

        [✓]  arises from the same or substantially identical transactions, incidents, or events requiring the determination of
             the same or substantially identical questions of law or fact.

        [ ]  involves claims against, title to, possession of, or damages to the same property.

        [✓]  is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

             [ ]  Additional explanation is attached in attachment 1h

    i.  Status of case:

        [✓]  pending

        [ ]  dismissed [ ]  with [ ]  without prejudice

        [ ]  disposed of by judgment

2.  a.  Title: Lebow vs. Silverado Senior Living, Inc. et al.

    b.  Case number: 20STCV47238

    c.  Court: [✓]  same as above

        [ ]  other state or federal court *(name and address):*

    d.  Department: 31

Page 1 of 3

Form Approved for Optional Use
Judicial Council of California
CM-015 [Rev. July 1, 2007]

**NOTICE OF RELATED CASE**

Cal. Rules of Court, rule 3.300
*www.courtinfo.ca.gov*

**Ex. A-69**

CM-015

| PLAINTIFF/PETITIONER: Joe Ann Clack, et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Silverado Senior Living, Inc. et al. | 20STCV47881 |

2. *(continued)*

   e. Case type: ☐ limited civil ☑ unlimited civil ☐ probate ☐ family law ☐ other *(specify):*

   f. Filing date: 12/10/2020

   g. Has this case been designated or determined as "complex?" ☐ Yes ☑ No

   h. Relationship of this case to the case referenced above *(check all that apply):*

     ☑ involves the same parties and is based on the same or similar claims.

     ☑ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

     ☐ involves claims against, title to, possession of, or damages to the same property.

     ☑ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

       ☐ Additional explanation is attached in attachment 2h

   i. Status of case:

     ☑ pending

     ☐ dismissed ☐ with ☐ without prejudice

     ☐ disposed of by judgment

3.  a. Title: Palamides vs. Silverado Senior Living, Inc. et al.

   b. Case number: 20STCV47226

   c. Court: ☑ same as above

     ☐ other state or federal court *(name and address):*

   d. Department: 32

   e. Case type: ☐ limited civil ☑ unlimited civil ☐ probate ☐ family law ☐ other *(specify):*

   f. Filing date: December 10, 2020

   g. Has this case been designated or determined as "complex?" ☐ Yes ☑ No

   h. Relationship of this case to the case referenced above *(check all that apply):*

     ☑ involves the same parties and is based on the same or similar claims.

     ☑ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

     ☐ involves claims against, title to, possession of, or damages to the same property.

     ☑ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

       ☐ Additional explanation is attached in attachment 3h

   i. Status of case:

     ☑ pending

     ☐ dismissed ☐ with ☐ without prejudice

     ☐ disposed of by judgment

4. ☑ Additional related cases are described in Attachment 4. Number of pages attached: 2

Date: December 23, 2020

Joanna A. Hutchins

(TYPE OR PRINT NAME OF PARTY OR ATTORNEY) ▶ _____

(SIGNATURE OF PARTY OR ATTORNEY)

**NOTICE OF RELATED CASE**

Ex. A-70

CM-015

| | |
|---|---|
| PLAINTIFF/PETITIONER: Joe Ann Clack, et al. | CASE NUMBER: |
| DEFENDANT/RESPONDENT: Silverado Senior Living, Inc. et al. | 20STCV47881 |

## PROOF OF SERVICE BY FIRST-CLASS MAIL
### NOTICE OF RELATED CASE

*(NOTE: You cannot serve the Notice of Related Case if you are a party in the action. The person who served the notice must complete this proof of service. The notice must be served on all known parties in each related action or proceeding.)*

1. I am at least 18 years old and **not a party to this action.** I am a resident of or employed in the county where the mailing took place, and my residence or business address is *(specify):*

2. I served a copy of the *Notice of Related Case* by enclosing it in a sealed envelope with first-class postage fully prepaid and *(check one):*

   a. ☐ deposited the sealed envelope with the United States Postal Service.

   b. ☐ placed the sealed envelope for collection and processing for mailing, following this business's usual practices, with which I am readily familiar. On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.

3. The *Notice of Related Case* was mailed:

   a. on *(date):*

   b. from *(city and state):*

4. The envelope was addressed and mailed as follows:

   a. Name of person served:

      Street address:
      City:
      State and zip code:

   c. Name of person served:

      Street address:
      City:
      State and zip code:

   b. Name of person served:

      Street address:
      City:
      State and zip code:

   d. Name of person served:

      Street address:
      City:
      State and zip code:

☐ Names and addresses of additional persons served are attached. *(You may use form POS-030(P).)*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

▶

_____
(TYPE OR PRINT NAME OF DECLARANT)

_____
(SIGNATURE OF DECLARANT)

Ex. A-71

**Attachment 4**

4.    a.    Title: Ringo vs. Silverado Senior Living, Inc. et al.

    b.    Case number: 20STCV47357

    c.    Court: _X_ Same as above

           _X_  other state or federal court (name and address):

    d.    Department: 27

    e.    Case type: _limited civil  _X_ unlimited civil _probate _family law __other

    f.    Filing date: __December 10, 2020__

    g.    Has this case been designated or determined as "complex?" ___ Yes _X_ No

    h.    Relationship of this case to the case referenced above (check all that apply):

        _X_ involves all the same parties and is based on the same or similar claims.

        _X_ arises from the same or substantially identical transactions, incidents, or events requiring the determination of  the same or substantially identical questions of law or fact.

        ___ involves claims against, title to, possession of, or damages to the same property.

        _X_ is likely to for other reasons to require substantial duplication of judicial resources if heard by different judges.

    i.    Status of the case.

        _X_ pending

        ___ dismissed ___ with __without prejudice

        ___ disposed of by judgment

5.    a.    Title: Sarnoff vs. Silverado Senior Living, Inc. et al.

    b.    Case number: 20STCV47409

    c.    Court:  _X_ Same as above

           ___ other state or federal court (name and address):

    d.    Department:  29

    e.    Case type: __limited civil  _X_ unlimited civil _probate __family law __other

    f.    Filing date: __December 10, 2020__

    g.    Has this case been designated or determined as "complex?" _X_ Yes ___ No

    h.    Relationship of this case to the case referenced above (check all that apply):

        _X_ involves all the same parties and is based on the same or similar claims.

 _X_ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

___ involves claims against, title to, possession of, or damages to the same property.

 _X_ is likely to for other reasons to require substantial duplication of judicial resources if heard by different judges.

i.     Status of the case.

 _X_ pending

___ dismissed ___ with __without prejudice

___ disposed of by judgment

6.     a.     Title: Khorsandi vs. Silverado Senior Living, Inc. et al.

b.     Case number: 20STCV47202

c.     Court: _X_ Same as above

 _X_ other state or federal court (name and address):

d.     Department: 29

e.     Case type: _limited civil  _X_ unlimited civil _probate _family law __other

f.     Filing date: __December 15, 2020__

g.     Has this case been designated or determined as "complex?" ___ Yes _X__ No

h.     Relationship of this case to the case referenced above (check all that apply):

 _X_ involves all the same parties and is based on the same or similar claims.

 _X_ arises from the same or substantially identical transactions, incidents, or events requiring the determination of  the same or substantially identical questions of law or fact.

___ involves claims against, title to, possession of, or damages to the same property.

 _X_ is likely to for other reasons to require substantial duplication of judicial resources if heard by different judges.

i.     Status of the case.

 _X_ pending

___ dismissed ___ with __without prejudice

___ disposed of by judgment

CM-015

Electronically Received 12/23/2020 03:08 PM

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Jody C. Moore Esq., SBN 192601
JOHNSON MOORE
100 E. Thousand Oaks Blvd., Suite 229
Thousand Oaks, California 91360
TELEPHONE NO.: (805) 988-3661    FAX NO. *(Optional):* (805) 494-4777
E-MAIL ADDRESS *(Optional):* Jody@johnson-moore.com
ATTORNEY FOR *(Name):* Plaintiffs

FOR COURT USE ONLY

**FILED**
Superior Court of California
County of Los Angeles

**12/23/2020**

Sherri R. Carter, Executive Officer / Clerk of Court

By: _____ R. Mendoza _____ Deputy

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 312 North Spring Street,
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, 90012
BRANCH NAME: Spring Street Courthouse

PLAINTIFF/PETITIONER: Joe Ann Clack, et al.

DEFENDANT/RESPONDENT: Silverado Senior Living, Inc. et al.

CASE NUMBER:
20STCV47881

JUDICIAL OFFICER:
Hon. Stephen I. Goorvitch

**NOTICE OF RELATED CASE**

DEPT.:
32

---

*Identify, in chronological order according to date of filing, all cases related to the case referenced above.*

1.  a. Title: Apothakervs. Silverado Senior Living, Inc. et al.

    b. Case number: 20STCV47127

    c. Court: [✓] same as above

    [ ] other state or federal court *(name and address):*

    d. Department: 31

    e. Case type: [ ] limited civil [✓] unlimited civil [ ] probate [ ] family law [ ] other *(specify):*

    f. Filing date: December 9, 2020

    g. Has this case been designated or determined as "complex?" [ ] Yes [✓] No

    h. Relationship of this case to the case referenced above *(check all that apply):*

    [✓] involves the same parties and is based on the same or similar claims.

    [✓] arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

    [ ] involves claims against, title to, possession of, or damages to the same property.

    [✓] is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

    [ ] Additional explanation is attached in attachment 1h

    i. Status of case:
    [✓] pending
    [ ] dismissed [ ] with [ ] without prejudice
    [ ] disposed of by judgment

2.  a. Title: Lebow vs. Silverado Senior Living, Inc. et al.

    b. Case number: 20STCV47238

    c. Court: [✓] same as above

    [ ] other state or federal court *(name and address):*

    d. Department: 31

Page 1 of 3

Form Approved for Optional Use
Judicial Council of California
CM-015 [Rev. July 1, 2007]

**NOTICE OF RELATED CASE**

Cal. Rules of Court, rule 3.300
*www.courtinfo.ca.gov*

**Ex. A-69**

CM-015

| PLAINTIFF/PETITIONER: Joe Ann Clack, et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Silverado Senior Living, Inc. et al. | 20STCV47881 |

2. *(continued)*

   e. Case type: ☐ limited civil ☑ unlimited civil ☐ probate ☐ family law ☐ other *(specify):*

   f. Filing date: 12/10/2020

   g. Has this case been designated or determined as "complex?" ☐ Yes ☑ No

   h. Relationship of this case to the case referenced above *(check all that apply):*

      ☑ involves the same parties and is based on the same or similar claims.

      ☑ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

      ☐ involves claims against, title to, possession of, or damages to the same property.

      ☑ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

      ☐ Additional explanation is attached in attachment 2h

   i. Status of case:

      ☑ pending

      ☐ dismissed ☐ with ☐ without prejudice

      ☐ disposed of by judgment

3. a. Title: Palamides vs. Silverado Senior Living, Inc. et al.

   b. Case number: 20STCV47226

   c. Court: ☑ same as above

      ☐ other state or federal court *(name and address):*

   d. Department: 32

   e. Case type: ☐ limited civil ☑ unlimited civil ☐ probate ☐ family law ☐ other *(specify):*

   f. Filing date: December 10, 2020

   g. Has this case been designated or determined as "complex?" ☐ Yes ☑ No

   h. Relationship of this case to the case referenced above *(check all that apply):*

      ☑ involves the same parties and is based on the same or similar claims.

      ☑ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

      ☐ involves claims against, title to, possession of, or damages to the same property.

      ☑ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

      ☐ Additional explanation is attached in attachment 3h

   i. Status of case:

      ☑ pending

      ☐ dismissed ☐ with ☐ without prejudice

      ☐ disposed of by judgment

4. ☑ Additional related cases are described in Attachment 4. Number of pages attached: 2

Date: December 23, 2020

Joanna A. Hutchins

▶

(TYPE OR PRINT NAME OF PARTY OR ATTORNEY)

(SIGNATURE OF PARTY OR ATTORNEY)

Ex. A-70

CM-015

| PLAINTIFF/PETITIONER:   Joe Ann Clack, et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Silverado Senior Living, Inc. et al. | 20STCV47881 |

## PROOF OF SERVICE BY FIRST-CLASS MAIL
### NOTICE OF RELATED CASE

*(NOTE: You cannot serve the Notice of Related Case if you are a party in the action. The person who served the notice must complete this proof of service.  The notice must be served on all known parties in each related action or proceeding.)*

1.  I am at least 18 years old and **not a party to this action.**  I am a resident of or employed in the county where the mailing took place, and my residence or business address is *(specify):*

2.  I served a copy of the *Notice of Related Case* by enclosing it in a sealed envelope with first-class postage fully prepaid and *(check one):*
    a. ☐  deposited the sealed envelope with the United States Postal Service.
    b. ☐  placed the sealed envelope for collection and processing for mailing, following this business's usual practices, with which I am readily familiar. On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.

3.  The *Notice of Related Case* was mailed:
    a.  on *(date):*
    b.  from *(city and state):*

4.  The envelope was addressed and mailed as follows:
    a.  Name of person served:

    Street address:
    City:
    State and zip code:

    c.  Name of person served:

    Street address:
    City:
    State and zip code:

    b.  Name of person served:

    Street address:
    City:
    State and zip code:

    d.  Name of person served:

    Street address:
    City:
    State and zip code:

☐  Names and addresses of additional persons served are attached. *(You may use form POS-030(P).)*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

▶

_____
(TYPE OR PRINT NAME OF DECLARANT)

_____
(SIGNATURE OF DECLARANT)

**NOTICE OF RELATED CASE**

**Attachment 4**

4. a. Title: Ringo vs. Silverado Senior Living, Inc. et al.

  b. Case number: 20STCV47357

  c. Court:  _X_  Same as above

     _X_  other state or federal court (name and address):

  d. Department: 27

  e. Case type: _limited civil  _X_ unlimited civil _probate _family law __other

  f. Filing date: __December 10, 2020__

  g. Has this case been designated or determined as "complex?" ___ Yes _X__ No

  h. Relationship of this case to the case referenced above (check all that apply):

   _X_ involves all the same parties and is based on the same or similar claims.

   _X_ arises from the same or substantially identical transactions, incidents, or events requiring the determination of  the same or substantially identical questions of law or fact.

   ___ involves claims against, title to, possession of, or damages to the same property.

   _X_ is likely to for other reasons to require substantial duplication of judicial resources if heard by different judges.

  i. Status of the case.

   _X_ pending

   ___ dismissed ___ with __without prejudice

   ___ disposed of by judgment

5. a. Title: Sarnoff vs. Silverado Senior Living, Inc. et al.

  b. Case number: 20STCV47409

  c. Court:  _X_ Same as above

     ___ other state or federal court (name and address):

  d. Department:  29

  e. Case type: __limited civil  _X_ unlimited civil _probate __family law __other

  f. Filing date: __December 10, 2020__

  g. Has this case been designated or determined as "complex?"  _X__ Yes ___ No

  h. Relationship of this case to the case referenced above (check all that apply):

   _X_ involves all the same parties and is based on the same or similar claims.

   _X_ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

   ___ involves claims against, title to, possession of, or damages to the same property.

   _X_ is likely to for other reasons to require substantial duplication of judicial resources if heard by different judges.

   i.    Status of the case.

   _X_ pending

   ___ dismissed ___ with __without prejudice

   ___ disposed of by judgment

6.   a.    Title: Khorsandi vs. Silverado Senior Living, Inc. et al.

   b.    Case number: 20STCV47202

   c.    Court: _X_ Same as above

           _X_ other state or federal court (name and address):

   d.    Department: 29

   e.    Case type: _limited civil _X_ unlimited civil _probate _family law __other

   f.    Filing date: __December 15, 2020__

   g.    Has this case been designated or determined as "complex?" ___ Yes _X_ No

   h.    Relationship of this case to the case referenced above (check all that apply):

   _X_ involves all the same parties and is based on the same or similar claims.

   _X_ arises from the same or substantially identical transactions, incidents, or events requiring the determination of  the same or substantially identical questions of law or fact.

   ___ involves claims against, title to, possession of, or damages to the same property.

   _X_ is likely to for other reasons to require substantial duplication of judicial resources if heard by different judges.

   i.    Status of the case.

   _X_ pending

   ___ dismissed ___ with __without prejudice

   ___ disposed of by judgment

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles**
**Branch Name:** Spring Street Courthouse
**Mailing Address:** 312 North Spring Street
**City, State and Zip Code:** Los Angeles CA 90012

| | |
|---|---|
| **SHORT TITLE:** JOE ANN CLACK, et al. vs SILVERADO SENIOR LIVING, INC., et al. | **CASE NUMBER:**<br>20STCV47881 |
| **NOTICE OF REJECTION OF ELECTRONIC FILING** | |

The electronic filing described by the summary data below was reviewed and rejected by the Superior Court of California, County of Los Angeles.

**Documents Electronically Rejected**

Application And Order For Appointment of Guardian Ad Litem Joe

**This electronic filing was returned based on the following reason(s):**

Other  - REJECT. The GAL is rejected because 1. incompetency must be established by medical proof and 2. An incompetent person lacks the capacity to be the applicant.  Please be aware that non-medical declarations (including family members and attorney declarations) as well as a power of attorney cannot be used to establish incompetency.

Ex. A-74

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF LOS ANGELES** | Reserved for Clerk's File Stamp<br><br>**FILED**<br>Superior Court of California<br>County of Los Angeles<br>01/26/2021<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ M. Marquez _____ Deputy |

| COURTHOUSE ADDRESS: |
|---|
| Spring Street Courthouse |
| 312 North Spring Street, Los Angeles, CA 90012 |

| PLAINTIFF/PETITIONER: |
|---|
| Joe Ann Clack  et al |

| DEFENDANT/RESPONDENT: |
|---|
| Silverado Senior Living, Inc. et al |

| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>20STCV47881 |
|---|---|

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the PI General Order, Standing Order re PI Procedures and Hearing Date  upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**


Jody C. Moore
Johnson Moore
100 E. Thousand Oaks Boulevard, Suite 229
Thousand Oaks, CA  91360


Sherri R. Carter, Executive Officer / Clerk of Court

Dated: <u>01/26/2021</u>

By: _M. Marquez_____
      Deputy Clerk

Ex. A-75

**CERTIFICATE OF MAILING**

2018-SJ-007-00

**FILED**
Superior Court of California
County of Los Angeles

APR 16 2018

Sherri R. Carter, Executive Officer/Clerk
By_____ Deputy
Stephanie Chung

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| IN RE PERSONAL INJURY COURT ("PI COURT")  PROCEDURES, **CENTRAL DISTRICT** (EFFECTIVE APRIL 16, 2018) | ) CASE NO.: 20STCV47881 <br> ) <br> ) STANDING ORDER RE:  PERSONAL <br> ) INJURY PROCEDURES, CENTRAL <br> ) DISTRICT <br> ) <br> ) |

<u>**DEPARTMENT:**</u>    2☐    3☐    4☐    5☐ 7☐

<u>**FINAL STATUS CONFERENCE ("FSC"):**</u>

- **DATE:** _____05/31/2022_____ AT 10:00 A.M.

<u>**TRIAL:**</u>

- **DATE:** _____06/14/2022_____ AT 8:30 A.M.

<u>**OSC RE DISMISSAL (CODE CIV. PROC., § 583.210):**</u>

- **DATE:** _____12/12/2023_____ AT 8:30 A.M.

TO EACH PARTY AND TO THE ATTORNEY OF RECORD FOR EACH PARTY:

**Pursuant to the California Code of Civil Procedure ("C.C.P."), the California Rules of Court ("C.R.C.") and the Los Angeles County Court Rules ("Local Rules"), the Los Angeles Superior Court ("LASC" or "Court") HEREBY AMENDS AND SUPERSEDES THE AUGUST 10, 2017 SEVENTH AMENDED GENERAL ORDER AND, GENERALLY, ORDERS AS FOLLOWS IN THIS AND ALL OTHER GENERAL JURISDICTION PERSONAL INJURY ACTIONS FILED IN THE CENTRAL DISTRICT.**

Page 1 of 8

1.     To ensure proper assignment to a PI Court, Plaintiff(s) must carefully fill out the Civil Case Cover Sheet Addendum (form LACIV 109). The Court defines "personal injury" as:

> "an unlimited civil case described on the Civil Case Cover Sheet Addendum and Statement of Location (LACIV 109) as Motor Vehicle-Personal Injury/Property Damage/Wrongful Death; Personal Injury/Property Damage/Wrongful Death- Uninsured Motorist; Product Liability (other than asbestos or toxic/environmental); Medical Malpractice-Physicians & Surgeons; Other Professional Health Care Malpractice; Premises Liability; Intentional Bodily Injury/Property Damage/Wrongful Death; or Other Personal Injury/Property Damage/Wrongful Death. An action for intentional infliction of emotional distress, defamation, civil rights/discrimination, or malpractice (other than medical malpractice), is not included in this definition. An action for injury to real property is not included in this definition."   (Local Rule 2.3(a)(1)(A).)

    Consistent with Local Rule 2.3(a)(1)(A), the Court will assign a case to the PI Courts if plaintiff(s) check any of the following boxes in the Civil Case Cover Sheet Addendum:

> A7100 Motor Vehicle – Personal Injury/Property Damage/Wrongful Death
>
> A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist
>
> A7260 Product Liability (not asbestos or toxic/environmental)
>
> A7210 Medical Malpractice – Physicians & Surgeons
>
> A7240 Medical Malpractice – Other Professional Health Care Malpractice
>
> A7250 Premises Liability (e.g., slip and fall)
>
> A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism etc.)
>
> A7220 Other Personal Injury/Property Damage/Wrongful Death

    The Court will not assign cases to the PI Courts if plaintiff(s) check any boxes elsewhere in the Civil Case Cover Sheet Addendum (any boxes on pages two and three of that form).

///

1    The Court sets the above dates in this action in the PI Court circled above (Department
2  2, 3, 4, 5, or 7) at the Spring Street Courthouse, 312 North Spring Street, Los Angeles, CA 90012.
3  (C.R.C. Rules 3.714(b)(3), 3.729.)

4  **FILING OF DOCUMENTS**

5  2.    Parties may file documents in person at the filing window on the first floor of the Stanley
6  Mosk Courthouse (111 N. Hill Street, Los Angeles, CA 90012) or by U.S. Mail or e-Delivery,
7  which is available online at *www.lacourt.org* (link on homepage). Please note that filings are no
8  longer accepted via facsimile and must be filed either in person, via U.S. mail or via e-Delivery.
9  Claims involving an attorney-client fee dispute, documents in which the filing party is a minor,
10  legally incompetent person, or person for whom a conservator has been appointed, requests to
11  waive court fees (FW-001) and requests for accommodations by persons with disabilities (MC-
12  410), may not be filed via e-Delivery.

13  **SERVICE OF SUMMONS AND COMPLAINT**

14  3.    Plaintiff(s) shall serve the summons and complaint in this action upon defendant(s) as
15  soon as possible but no later than three years from the date when the complaint is filed.

16  (C.C.P. § 583.210, subd.(a).)  On the OSC re Dismissal date noted above, the PI Court will
17  dismiss the action and/or all unserved parties unless the plaintiff(s) show cause why the action
18  or the unserved parties should not be dismissed. (C.C.P. §§ 583.250; 581, subd. (b)(4).)

19  4.    The Court sets the above trial and FSC dates on condition that plaintiff(s) effectuate
20  service on defendant(s) of the summons and complaint within six months of filing the complaint.
21  5.    The PI Court will dismiss the case without prejudice pursuant to C.C.P. § 581 when no
22  party appears for trial.

23  **STIPULATIONS TO CONTINUE TRIAL**

24  6.    Provided that all parties agree (and there is no violation of the "five-year rule," C.C.P.
25  § 583.310), the parties may advance or continue any trial date in the PI Courts without showing
26  good cause or articulating any reason or justification for the change.  To continue or advance a
27  trial date, the parties (or their counsel of record) should jointly execute and submit (at the filing
28  window on the first floor of the Stanley Mosk Courthouse, via U.S. mail or via e-Delivery; fee

Standing Order Re Personal Injury Procedures, Central District          **Ex. A-78**

required) a Stipulation to Continue Trial, FSC and Related Motion/Discovery Dates (form LACIV CTRL-242, available on the court's website, Personal Injury Court link). The PI Courts schedule FSCs for 10:00 a.m., eight (8) court days before the trial date. Parties seeking to continue the trial and FSC dates shall file the Stipulation at least eight court days before the FSC date. Parties seeking to advance the trial and FSC dates shall file the Stipulation at least eight court days before the proposed advanced FSC date. (C.C.P. § 595.2; Govt. Code § 70617, subd. (c)(2).) In selecting a new trial date, parties should avoid setting on any Monday, or the Tuesday following a court holiday. Parties may submit a maximum of two stipulations to continue trial, for a total continuance of six months. Subsequent requests to continue trial will be granted upon a showing of good cause by noticed motion. This rule is retroactive so that any previously granted stipulation to continue trial will count toward the maximum number of allowed continuances.

**NO CASE MANAGEMENT CONFERENCES**

7. The PI Courts do not conduct Case Management Conferences. The parties need not file a Case Management Statement.

**LAW AND MOTION**

8. Any documents with declarations and/or exhibits must be tabbed. (C.R.C. Rule 3.1110(f).) All depositions excerpts referenced in briefs must be marked on the transcripts attached as exhibits. (C.R.C. Rule 3.1116(c).)

**CHAMBERS COPIES REQUIRED**

9. In addition to filing original motion papers at the filing window on the first floor of the Stanley Mosk Courthouse, via U.S. mail or via e-Delivery, the parties must deliver, directly to the PI Court courtrooms at the Spring Street Courthouse, an extra copy (marked "Chambers Copy") of reply briefs and all other motion papers filed less than seven (7) court days before a hearing calendared in the PI Courts. The PI Courts also strongly encourage the parties filing and opposing lengthy motions, such as motions for summary judgment/adjudication, to submit one or more three-ring binders organizing the chambers copy behind tabs.

///

Standing Order Re Personal Injury Procedures, Central District          Ex. A-79

**RESERVATION HEARING DATE**

10.    Parties are directed to reserve hearing dates for motions in the PI Courts using the Court Reservation System (CRS) available online at *www.lacourt.org* (link on homepage).  After reserving a motion hearing date, the reservation requestor must submit the papers for filing with the reservation receipt (CRS) number printed on the face page of the document under the caption and attach the reservation receipt as the last page.  Parties or counsel who are unable to utilize the online CRS may reserve a motion hearing date by calling the PI Court courtroom, Monday through Friday, between 3:00 p.m. and 4:00 p.m.

**WITHDRAWAL OF MOTIONS**

11.    California Rules of Court, Rule 3.1304(b) requires a moving party to notify the court immediately if a matter will not be heard on the scheduled date. In keeping with that rule, the PI Courts urge parties who amend pleadings in response to demurrers to file amended pleadings before the date when opposition to the demurrer is due so that the PI Courts do not needlessly prepare tentative rulings on demurrers.

**DISCOVERY MOTIONS**

12.    The purpose of an Informal Discovery Conference ("IDC") is to assist the parties to resolve and/or narrow the scope of discovery disputes.  Lead trial counsel on each side, or another attorney with full authority to make binding agreements, must attend in person.  The PI judges have found that, in nearly every case, the parties amicably resolve disputes with the assistance of the Court.

13.    Parties **must** participate in an IDC **before** a Motion to Compel Further Responses to Discovery will be heard unless the moving party submits evidence, by way of declaration, that the opposing party has failed or refused to participate in an IDC.  Scheduling or participating in an IDC does not automatically extend any deadlines imposed by the Code of Civil Procedure for noticing and filing discovery motions.  Ideally, the parties should participate in an IDC before a motion is filed because the IDC may avoid the necessity of a motion or reduce its scope.  Because of that possibility, attorneys are encouraged to stipulate to extend the 45 (or 60) day deadline for filing a motion to compel further discovery responses in order to allow time to participate in an

1    IDC.

2         If parties do not stipulate to extend the deadlines, the moving party may file the motion

3    to avoid it being deemed untimely.   However, the IDC must take place before the motion is

4    heard so it is suggested that the moving party reserve a date for the motion hearing that is at least

5    60 days after the date when the IDC reservation is made.  Motions to Compel Further Discovery

6    Responses are heard at 10:00 a.m.  If the IDC is not productive, the moving party may advance

7    the hearing on a Motion to Compel Further Discovery Responses on any available hearing date

8    that complies with the notice requirements of the Code of Civil Procedure.

9    14.   Parties are directed to reserve IDC dates in the PI Courts using CRS available online at

10   www.lacourt.org (link on homepage).  Parties are to meet and confer regarding the available

11   dates in CRS prior to accessing the system.  After reserving the IDC date, the reservation

12   requestor must file in the appropriate department and serve an Informal Discovery Conference

13   Form for Personal Injury Courts, from LACIV 239 (revised 12/14 or later), at least 15 court days

14   prior to the conference and attach the CRS reservation receipt as the last page.  The opposing

15   party may file and serve a responsive IDC form, briefly setting forth that party's response, at

16   least 10 court days prior to the IDC.

17   15.   Time permitting, the PI Hub judges may be available to participate in IDCs to try to

18   resolve other types of discovery disputes.

19   **EX PARTE APPLICATIONS**

20   16.   Under the California Rules of Court, courts may only grant *ex parte* relief upon a

21   showing, by admissible evidence, that the moving party will suffer "irreparable harm,"

22   "immediate danger," or where the moving party identifies "a statutory basis for granting relief

23   ex parte." (C.R.C. Rule 3.1202(c).) The PI Courts have no capacity to hear multiple *ex parte*

24   applications or to shorten time to add hearings to their fully booked motion calendars.  The PI

25   Courts do not regard the Court's unavailability for timely motion hearings as an "immediate

26   danger" or threat of "irreparable harm" justifying *ex parte* relief.  Instead of seeking *ex parte*

27   relief, the moving party should reserve the earliest available motion hearing date (even if it is

28   after the scheduled trial date) and should file a motion to continue trial.  Parties should also check

1  the Court Reservation System from time to time because earlier hearing dates may become
2  available as cases settle or hearings are taken off calendar.

3  **REQUEST FOR TRANSFER TO INDEPENDENT CALENDAR DEPARTMENT**

4  17.    Parties seeking to transfer a case from a PI Court to an Independent Calendar ("I/C")
5  Court shall file (at the filing window on the first floor of the Stanley Mosk Courthouse, via U.S.
6  mail or via e-Delivery) and serve the Court's "Motion to Transfer Complicated Personal Injury
7  Case to Independent Calendar Court" (form LACIV 238, available on the Court's website under
8  the PI Courts link).   The PI Courts will transfer a matter to an I/C Court if the case is not a
9  "Personal Injury" case as defined in this Order, or if it is "complicated." In determining whether
10 a personal injury case is "complicated" the PI Courts will consider, among other things, the
11 number of pretrial hearings or the complexity of issues presented.

12 18.    Parties opposing a motion to transfer have five court days to file (at the filing window
13 on the first floor of the Stanley Mosk Courthouse, via U.S. mail or via e-Delivery) an Opposition
14 (using the same LACIV 238 Motion to Transfer form).

15 19.    The PI Courts will not conduct a hearing on any Motion to Transfer to I/C Court.
16 Although the parties may stipulate to transfer a case to an Independent Calendar Department, the
17 PI Courts will make an independent determination whether to transfer the case or not.

18 **FINAL STATUS CONFERENCE**

19 20.    Parties shall comply with the requirements of the PI Courts' "First Amended Standing
20 Order Re Final Status Conference," which shall be served with the summons and complaint.

21 **JURY FEES**

22 21.    Parties must pay jury fees no later than 365 calendar days after the filing of the initial
23 complaint. (C. C. P. § 631, subds. (b) and (c).)

24 **JURY TRIALS**

25 22.    The PI Courts do not conduct jury trials.  On the trial date, a PI Court will contact the
26 Master Calendar Court, Department One, in the Stanley Mosk Courthouse.  Department One
27 will assign cases out for trial to dedicated Civil Trial Courtrooms and designated Criminal
28 Courtrooms.

**SANCTIONS**

23.    The Court has discretion to impose sanctions for any violation of this general order. (C.C.P. §§ 128.7, 187 and Gov. Code, § 68608, subd. (b).)

Dated: *April 16, 2018*

Debre K. Weintraub
Supervising Judge of Civil Courts
Los Angeles Superior Court

CIV-010

| ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

ATTORNEY (Name, State Bar number, and address):
Jody C. Moore, SBN 192601
JOHNSON MOORE
100 E. Thousand Oaks Blvd., Suite 229
Thousand Oaks, CA 91360
TELEPHONE NO.: 805-988-3661    FAX NO. (Optional): 805-494-4777
E-MAIL ADDRESS (Optional): Jody@Johnson-Moore.com
ATTORNEY FOR (Name): Plaintiff

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles, 90012
BRANCH NAME: Stanley Mosk Courthouse

PLAINTIFF/PETITIONER: Joe Ann Clack

DEFENDANT/RESPONDENT: Silverado Senior Living, Inc.

**FILED**
Superior Court of California
County of Los Angeles

01/04/2021

Sherri R. Carter, Executive Officer / Clerk of Court

By: _____ M. Valenzuela _____ Deputy

| APPLICATION AND ORDER FOR APPOINTMENT OF GUARDIAN AD LITEM—CIVIL ☑ EX PARTE | CASE NUMBER: 20STCV47881 |
|---|---|

*NOTE: This form is for use in civil proceedings in which a party is a minor, an incapacitated person, or a person for whom a conservator has been appointed. A party who seeks the appointment of a guardian ad litem in a family law or juvenile proceeding should use form FL-935. A party who seeks the appointment of a guardian ad litem in a probate proceeding should use form DE-350/GC-100. An individual cannot act as a guardian ad litem unless he or she is represented by an attorney or is an attorney.*

1. Applicant (name): Zoanne Clack                              is
   a. ☐ the parent of (name):
   b. ☐ the guardian of (name):
   c. ☐ the conservator of (name):
   d. ☐ a party to the suit.
   e. ☐ the minor to be represented (if the minor is 14 years of age or older).
   f. ☑ another interested person (specify capacity): daughter

2. This application seeks the appointment of the following person as guardian ad litem (state name, address, and telephone number):
   Zoanne Clack
   1323 S. Victoria Avenue, Los Angeles, CA 90019
   (323) 632-1399

3. The guardian ad litem is to represent the interests of the following person (state name, address, and telephone number):
   Joe Ann Clack
   1323 S. Victoria Avenue, Los Angeles, CA 90019
   (323) 632-1399

4. The person to be represented is:
   a. ☐ a minor (date of birth):
   b. ☑ an incompetent person.
   c. ☐ a person for whom a conservator has been appointed.

5. The court should appoint a guardian ad litem because:
   a. ☑ the person named in item 3 has a cause or causes of action on which suit should be brought (describe):
   While residing at the Defendants' assisted living home for the elderly, they failed to follow safety and infection control standards. As a result, Ms. Clack contracted COVID-19. She has causes of action for elder abuse/neglect and negligence.

☐ Continued on Attachment 5a.

Form Adopted for Mandatory Use
Judicial Council of California
CIV-010 [Rev. January 1, 2008]

Page 1 of 2

**APPLICATION AND ORDER FOR APPOINTMENT OF GUARDIAN AD LITEM—CIVIL**

Code of Civil Procedure,
§ 372 et seq.

Ex. A-84

Electronically Received 12/15/2020 10:59 AM

**CIV-010**

| PLAINTIFF/PETITIONER: Joe Ann Clack | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Silverado Senior Living, Inc. | |

5. b. ☐ more than 10 days have elapsed since the summons in the above-entitled matter was served on the person named in item 3, and no application for the appointment of a guardian ad litem has been made by the person identified in item 3 or any other person.

c. ☐ the person named in item 3 has no guardian or conservator of his or her estate.

d. ☑ the appointment of a guardian ad litem is necessary for the following reasons *(specify):*

Joe Ann Clack suffers from dementia, making it impossible to bring these causes of action on her own behalf, including conferring with counsel, participating in discovery and otherwise participating in litigation. Zoanne Clack is Joe Ann Clack's daughter and is in the best position to bring this matter on her behalf.

☐ Continued on Attachment 5d.

6. The proposed guardian ad litem's relationship to the person he or she will be representing is:
a. ☑ related *(state relationship):* daughter
b. ☐ not related *(specify capacity):*

7. The proposed guardian ad litem is fully competent and qualified to understand and protect the rights of the person he or she will represent and has no interests adverse to the interests of that person *(If there are any issues of competency or qualification or any possible adverse interests, describe and explain why the proposed guardian should nevertheless be appointed):*

☐ Continued on Attachment 7.

Joanna A. Hutchins
_____
(TYPE OR PRINT NAME)

► _____
(SIGNATURE OF ATTORNEY)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
Date: Dec 14, 2020

Zoanne Clack
_____
(TYPE OR PRINT NAME)

► *Zoanne Clack*
(SIGNATURE OF APPLICANT)

## CONSENT TO ACT AS GUARDIAN AD LITEM

I consent to the appointment as guardian ad litem under the above petition.
Date: Dec 14, 2020

Zoanne Clack
_____
(TYPE OR PRINT NAME)

► *Zoanne Clack*
(SIGNATURE OF PROPOSED GUARDIAN AD LITEM)

**ORDER** ☑ **EX PARTE**

THE COURT FINDS that it is reasonable and necessary to appoint a guardian ad litem for the person named in item 3 of the application, as requested.

THE COURT ORDERS that *(name):* Zoanne Clack
is hereby appointed as the guardian ad litem for *(name):* Joe Ann Clack
for the reasons set forth in item 5 of the application.
Date:

_____
JUDICIAL OFFICER
☐ SIGNATURE FOLLOWS LAST ATTACHMENT

CIV-010 [Rev. January 1, 2008] **APPLICATION AND ORDER FOR APPOINTMENT OF GUARDIAN AD LITEM—CIVIL** Page 2 of 2

Ex. A-85

CIV-010

| ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

ATTORNEY (Name, State Bar number, and address):
Jody C. Moore, SBN 192601
JOHNSON MOORE
100 E. Thousand Oaks Blvd., Suite 229
Thousand Oaks, CA 91360
TELEPHONE NO.: 805-988-3661    FAX NO. (Optional): 805-494-4777
E-MAIL ADDRESS (Optional): Jody@Johnson-Moore.com
ATTORNEY FOR (Name): Plaintiff

**FILED**
Superior Court of California
County of Los Angeles

01/04/2021

Sherri R. Carter, Executive Officer / Clerk of Court

By: _____ M. Valenzuela _____ Deputy

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles, 90012
BRANCH NAME: Stanley Mosk Courthouse

PLAINTIFF/PETITIONER:  Joe Ann Clack

DEFENDANT/RESPONDENT:  Silverado Senior Living, Inc.

| APPLICATION AND ORDER FOR APPOINTMENT OF GUARDIAN AD LITEM—CIVIL ☑ EX PARTE | CASE NUMBER: 20STCV47881 |
|---|---|

*NOTE: This form is for use in civil proceedings in which a party is a minor, an incapacitated person, or a person for whom a conservator has been appointed. A party who seeks the appointment of a guardian ad litem in a family law or juvenile proceeding should use form FL-935. A party who seeks the appointment of a guardian ad litem in a probate proceeding should use form DE-350/GC-100. An individual cannot act as a guardian ad litem unless he or she is represented by an attorney or is an attorney.*

1. Applicant (name): Zoanne Clack                                    is
   a. ☐ the parent of (name):
   b. ☐ the guardian of (name):
   c. ☐ the conservator of (name):
   d. ☐ a party to the suit.
   e. ☐ the minor to be represented (if the minor is 14 years of age or older).
   f. ☑ another interested person (specify capacity):  daughter

2. This application seeks the appointment of the following person as guardian ad litem (state name, address, and telephone number):
   Zoanne Clack
   1323 S. Victoria Avenue, Los Angeles, CA 90019
   (323) 632-1399

3. The guardian ad litem is to represent the interests of the following person (state name, address, and telephone number):
   Joe Ann Clack
   1323 S. Victoria Avenue, Los Angeles, CA 90019
   (323) 632-1399

4. The person to be represented is:
   a. ☐ a minor (date of birth):
   b. ☑ an incompetent person.
   c. ☐ a person for whom a conservator has been appointed.

5. The court should appoint a guardian ad litem because:
   a. ☑ the person named in item 3 has a cause or causes of action on which suit should be brought (describe):
      While residing at the Defendants' assisted living home for the elderly, they failed to follow safety and infection control standards. As a result, Ms. Clack contracted COVID-19. She has causes of action for elder abuse/neglect and negligence.

   ☐ Continued on Attachment 5a.

Form Adopted for Mandatory Use
Judicial Council of California
CIV-010 [Rev. January 1, 2008]

**APPLICATION AND ORDER FOR APPOINTMENT OF GUARDIAN AD LITEM—CIVIL**

Page 1 of 2

Code of Civil Procedure, § 372 et seq.

Electronically Received 12/15/2020 10:59 AM

Ex. A-84

**CIV-010**

| | CASE NUMBER: |
|---|---|
| PLAINTIFF/PETITIONER: Joe Ann Clack | |
| DEFENDANT/RESPONDENT: Silverado Senior Living, Inc. | |

5. b. ☐ more than 10 days have elapsed since the summons in the above-entitled matter was served on the person named in item 3, and no application for the appointment of a guardian ad litem has been made by the person identified in item 3 or any other person.

   c. ☐ the person named in item 3 has no guardian or conservator of his or her estate.

   d. ☑ the appointment of a guardian ad litem is necessary for the following reasons *(specify):*

   Joe Ann Clack suffers from dementia, making it impossible to bring these causes of action on her own behalf, including conferring with counsel, participating in discovery and otherwise participating in litigation. Zoanne Clack is Joe Ann Clack's daughter and is in the best position to bring this matter on her behalf.

   ☐ Continued on Attachment 5d.

6. The proposed guardian ad litem's relationship to the person he or she will be representing is:
   a. ☑ related *(state relationship):* daughter
   b. ☐ not related *(specify capacity):*

7. The proposed guardian ad litem is fully competent and qualified to understand and protect the rights of the person he or she will represent and has no interests adverse to the interests of that person *(If there are any issues of competency or qualification or any possible adverse interests, describe and explain why the proposed guardian should nevertheless be appointed):*

   ☐ Continued on Attachment 7.

Joanna A. Hutchins
_____
(TYPE OR PRINT NAME)

► _____
(SIGNATURE OF ATTORNEY)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: Dec 14, 2020

Zoanne Clack
_____
(TYPE OR PRINT NAME)

► *Zoanne Clack*
_____
(SIGNATURE OF APPLICANT)

## CONSENT TO ACT AS GUARDIAN AD LITEM

I consent to the appointment as guardian ad litem under the above petition.

Date: Dec 14, 2020

Zoanne Clack
_____
(TYPE OR PRINT NAME)

► *Zoanne Clack*
_____
(SIGNATURE OF PROPOSED GUARDIAN AD LITEM)

**ORDER** ☑ **EX PARTE**

THE COURT FINDS that it is reasonable and necessary to appoint a guardian ad litem for the person named in item 3 of the application, as requested.

THE COURT ORDERS that *(name):* Zoanne Clack
is hereby appointed as the guardian ad litem for *(name):* Joe Ann Clack
for the reasons set forth in item 5 of the application.

Date:
_____
JUDICIAL OFFICER
☐ SIGNATURE FOLLOWS LAST ATTACHMENT

| CIV-010 [Rev. January 1, 2008] | **APPLICATION AND ORDER FOR APPOINTMENT**<br>**OF GUARDIAN AD LITEM—CIVIL** | Page 2 of 2 |
|---|---|---|

Ex. A-85

CIV-010

| ATTORNEY *(Name, State Bar number, and address):* | *FOR COURT USE ONLY* |
|---|---|

Electronically Received 02/26/2021 02:52 PM

ATTORNEY *(Name, State Bar number, and address):*
Jody C. Moore, SBN 192601
JOHNSON MOORE
100 E. Thousand Oaks Blvd., Suite 229
Thousand Oaks, CA 91360
TELEPHONE NO.:  805-988-3661     FAX NO. *(Optional):*  805-494-4777
E-MAIL ADDRESS *(Optional):*  Jody@Johnson-Moore.com
ATTORNEY FOR *(Name):*  Plaintiff

*FOR COURT USE ONLY*

**FILED**
Superior Court of California
County of Los Angeles

**03/02/2021**

Sherri R. Carter, Executive Officer / Clerk of Court

By: _____ M. Valenzuela _____ Deputy

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Los Angeles
STREET ADDRESS:  111 North Hill Street
MAILING ADDRESS:  111 North Hill Street
CITY AND ZIP CODE:  Los Angeles, 90012
BRANCH NAME:  Stanley Mosk Courthouse

PLAINTIFF/PETITIONER:  Joe Ann Clack

DEFENDANT/RESPONDENT:  Silverado Senior Living, Inc.

| APPLICATION AND ORDER FOR APPOINTMENT OF GUARDIAN AD LITEM—CIVIL  ☑ EX PARTE | CASE NUMBER: 20STCV47881 |
|---|---|

*NOTE: This form is for use in civil proceedings in which a party is a minor, an incapacitated person, or a person for whom a conservator has been appointed. A party who seeks the appointment of a guardian ad litem in a family law or juvenile proceeding should use form FL-935. A party who seeks the appointment of a guardian ad litem in a probate proceeding should use form DE-350/GC-100. An individual cannot act as a guardian ad litem unless he or she is represented by an attorney or is an attorney.*

1. Applicant *(name):* Zoanne Clack                                         is
   a. ☐ the parent of *(name):*
   b. ☐ the guardian of *(name):*
   c. ☐ the conservator of *(name):*
   d. ☐ a party to the suit.
   e. ☐ the minor to be represented *(if the minor is 14 years of age or older).*
   f. ☑ another interested person *(specify capacity):*  daughter

2. This application seeks the appointment of the following person as guardian ad litem *(state name, address, and telephone number):*
   Zoanne Clack
   1323 S. Victoria Avenue, Los Angeles, CA 90019
   (323) 632-1399

3. The guardian ad litem is to represent the interests of the following person *(state name, address, and telephone number):*
   Joe Ann Clack
   1323 S. Victoria Avenue, Los Angeles, CA 90019
   (323) 632-1399

4. The person to be represented is:
   a. ☐ a minor *(date of birth):*
   b. ☑ an incompetent person.
   c. ☐ a person for whom a conservator has been appointed.

5. The court should appoint a guardian ad litem because:
   a. ☑ the person named in item 3 has a cause or causes of action on which suit should be brought *(describe):*
      While residing at the Defendants' assisted living home for the elderly, they failed to follow safety and infection control standards. As a result, Ms. Clack contracted COVID-19. She has causes of action for elder abuse/neglect and negligence.

   ☐ Continued on Attachment 5a.

Form Adopted for Mandatory Use
Judicial Council of California
CIV-010 [Rev. January 1, 2008]
**APPLICATION AND ORDER FOR APPOINTMENT OF GUARDIAN AD LITEM—CIVIL**
Code of Civil Procedure, § 372 et seq.

Ex. A-86

**CIV-010**

| | |
|---|---|
| PLAINTIFF/PETITIONER: Joe Ann Clack | CASE NUMBER: |
| DEFENDANT/RESPONDENT: Silverado Senior Living, Inc. | 20STCV47881 |

5. b. ☐ more than 10 days have elapsed since the summons in the above-entitled matter was served on the person named in item 3, and no application for the appointment of a guardian ad litem has been made by the person identified in item 3 or any other person.

  c. ☐ the person named in item 3 has no guardian or conservator of his or her estate.

  d. ☑ the appointment of a guardian ad litem is necessary for the following reasons *(specify):*

Joe Ann Clack suffers from dementia, making it impossible to bring these causes of action on her own behalf, including conferring with counsel, participating in discovery and otherwise participating in litigation. Zoanne Clack is Joe Ann Clack's daughter and is in the best position to bring this matter on her behalf.

    ☑ Continued on Attachment 5d.

6. The proposed guardian ad litem's relationship to the person he or she will be representing is:
  a. ☑ related *(state relationship):* daughter
  b. ☐ not related *(specify capacity):*

7. The proposed guardian ad litem is fully competent and qualified to understand and protect the rights of the person he or she will represent and has no interests adverse to the interests of that person *(If there are any issues of competency or qualification or any possible adverse interests, describe and explain why the proposed guardian should nevertheless be appointed):*

  ☐ Continued on Attachment 7.

Joanna A. Hutchins
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF ATTORNEY)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: Dec 14, 2020

Zoanne Clack
_____
(TYPE OR PRINT NAME)

▶ *Zoanne Clack*
_____
(SIGNATURE OF APPLICANT)

## CONSENT TO ACT AS GUARDIAN AD LITEM

I consent to the appointment as guardian ad litem under the above petition.

Date: Dec 14, 2020

Zoanne Clack
_____
(TYPE OR PRINT NAME)

▶ *Zoanne Clack*
_____
(SIGNATURE OF PROPOSED GUARDIAN AD LITEM)

## ORDER ☑ EX PARTE

THE COURT FINDS that it is reasonable and necessary to appoint a guardian ad litem for the person named in item 3 of the application, as requested.

THE COURT ORDERS that *(name):* Zoanne Clack
is hereby appointed as the guardian ad litem for *(name):* Joe Ann Clack
for the reasons set forth in item 5 of the application.

Date: 03/02/2021

*James E. Blancarte*
_____
JUDICIAL OFFICER
☐ SIGNATURE FOLLOWS LAST ATTACHMENT

CIV-010 [Rev. January 1, 2008]

**APPLICATION AND ORDER FOR APPOINTMENT OF GUARDIAN AD LITEM—CIVIL**

Page 2 of 2

## Olympia Medical Center
5900 W. Olympic Blvd, Los Angeles, CA 90036

Name: CLACK,JOE ANN
MR#:  M000539645

-DISCHARGE INSTRUCTIONS-

**\*Specify Symptoms:**
CHANGES IN LEVEL OF CONSCIOUSNESS
**\*Weight Monitoring:** Call MD if sudden wt gain
**\*Discharge Pneumonia Vaccine:** Not available from vendor
**\*Discharge Influenza Vaccine:** Not available from vendor

**Visit Summary**
**Allergies:**
HEPARIN

~~Discharge Disposition:~~ ASSISTED LIVING

**Medical Problems**
Alzheimer's dementia
Acute encephalopathy
Symptomatic bradycardia
History of hypertension
Depression
Chronic anticoagulation
History of 2019 novel coronavirus disease (COVID-19)
Altered level of consciousness
Syncope

**Care Team Members**
NON PHYSICIAN, PRIMARY CARE PHYSICIAN, (323)938-3161
Mirali Zarrabi, MD, ADMITTING, PULMONARY DISEASE, (310) 642-7774
Mirali Zarrabi, MD, ATTENDING, PULMONARY DISEASE, (310) 642-7774
Bharat Kothakota, MD, EMERGENCY, EMERGENCY MEDICINE, (323) 932-5105
, OTHER
Mirali Zarrabi, MD, REFERRING, PULMONARY DISEASE, (310) 642-7774

*Report data compiled on 12/02/20 at 1:10pm.*

 **Cedars Sinai**

Clack, Joe Ann
MRN: 202024358, DOB: 8/23/1943, Sex: F
Adm: 3/8/2020, D/C: 3/10/2020

**H&P Notes**

**H&P signed by Lalezari, David Benjamin, MD at 3/11/2020 11:21 PM**

Author: Lalezari, David Benjamin, MD    Service: Internal Medicine       Author Type: Physician
Filed: 3/11/2020 11:21 PM                Date of Service: 3/9/2020  6:25 AM    Status: Signed
Editor: Lalezari, David Benjamin, MD (Physician)


     PATIENT:     CLACK, JOE ANN
    MED REC:    202024358
CEDARS-SINAI MEDICAL CENTER DICTATOR:   DAVID BENJAMIN LALEZARI, MD


HISTORY AND PHYSICAL EXAMINATION
DATE OF ADMISSION:  03/08/2020

HISTORY OF PRESENT ILLNESS:  This is a 76-year-old female with a history
of Alzheimer's and hypertension, who was brought in from Silverado
Beverly Place Assisted Living for dementia via ambulance to the emergency
room for chest pain.  She had complained of a warm and burning sensation
along her chest.  According to her caregiver, who was at bedside, she was
crying in pain.  The pain apparently continued and started before she
started eating  breakfast.  She reports having a feeling of food stuck in
her throat.  She also reports having difficulty swallowing.

PAST MEDICAL HISTORY:  Dementia, hypertension.

PAST SURGICAL HISTORY:  None.

FAMILY HISTORY:  Noncontributory.

SOCIAL HISTORY:  The patient does not smoke, drink alcohol, or use any
drugs.

MEDICATIONS:  Reviewed in CS-Link.

REVIEW OF SYSTEMS:
12-point review of systems is limited because of the patient's mental
status.

ALLERGIES:  No known drug allergies.

VITALS IN THE EMERGENCY ROOM:  Temperature 97.6, pulse a 55, respiratory
rate 16, blood pressure 188/117, O2 sat is 99% on room air.

PHYSICAL EXAM:  GENERAL:  No acute distress.  The patient is alert times

M  0000    **Ex. A-89**



Clack, Joe Ann
MRN: 202024358, DOB: 8/23/1943, Sex: F
Adm: 3/8/2020, D/C: 3/10/2020

**H&P Notes (continued)**

**H&P signed by Lalezari, David Benjamin, MD at 3/11/2020 11:21 PM  (continued)**

person only.    HEENT:  Normocephalic/atraumatic.
NECK:  Supple.  No JVD.
LUNGS:  Clear to auscultation bilaterally.  No crackles, rhonchi, or
rales.
CARDIOVASCULAR:  Regular rate and rhythm.  Normal S1, S2.
ABDOMEN:  Soft, nontender, nondistended.
EXTREMITIES:  No clubbing, cyanosis, or edema.
NEURO:  Patient follows commands and is awake.

LABS:  BMP:  Sodium 138, potassium 3.9, chloride is 103, CO2 is 28, BUN
is 13, creatinine is 0.8.  LFTs are within normal limits.  CBC:  White
count of 3.50, hemoglobin 13.1, platelet count 221.  Troponin less than
0.01.  Chest x-ray shows no acute process.  EKG shows sinus bradycardia
with PACs.

ASSESSMENT:
1. Chest pain.
2. Dysphagia.
3. Alzheimer dementia.
4. Hypertension.

PLAN:
1. Admit patient to Med/Surg.
2. GI consult.
3. Patient started on H2 blocker b.i.d. for heartburn.
4. Trend troponin.
5. Chest pain, likely secondary to GI/reflux.
6. DVT prophylaxis.
7. Full code.

_____
David Benjamin Lalezari, MD

DBL/MEDQ/874617215  D:  03/08/2020  T:  03/09/2020  JOB#:  048702

**H&P signed by Lalezari, David Benjamin, MD at 3/8/2020 11:30 PM**

M  0000 0   **Ex. A-90**



Clack, Joe Ann
MRN: 202024358, DOB: 8/23/1943, Sex: F
Adm: 3/8/2020, D/C: 3/10/2020

---

**H&P Notes (continued)**

**H&P signed by Lalezari, David Benjamin, MD at 3/8/2020 11:30 PM (continued)**

| | | |
|---|---|---|
| Author: Lalezari, David Benjamin, MD | Service: Internal Medicine | Author Type: Physician |
| Filed: 3/8/2020 11:30 PM | Date of Service: 3/8/2020 11:25 PM | Status: Signed |
| Editor: Lalezari, David Benjamin, MD (Physician) | | |

048702

David Benjamin Lalezari 3/8/2020 11:25 PM

---

**Operative & Procedure Notes**

No notes of this type exist for this encounter.

## Discharge Summary Notes

**Discharge Summary signed by Lalezari, David Benjamin, MD at 3/10/2020  3:44 PM**

| | | |
|---|---|---|
| Author: Lalezari, David Benjamin, MD | Service: Internal Medicine | Author Type: Physician |
| Filed: 3/10/2020 3:44 PM | Date of Service: 3/10/2020 1:54 PM | Status: Signed |
| Editor: Lalezari, David Benjamin, MD (Physician) | | |

DISCHARGE SUMMARY
David Benjamin Lalezari

DATE OF ADMISSION: 3/8/2020

DATE OF DISCHARGE: 3-10-20

REASON FOR ADMISSION:
**Chief Complaint**
Patient presents with
• Chest Pain

SIGNIFICANT FINDINGS none

PROCEDURE DONE HERE: none

BRIEF HOSPITAL COURSE SUMMARY: This is a 76 year old female with history of  Dementia presents to ER
for headache and chest pain (burning). Ruled out for ACS. Seen by GI for reflux and started on H2 blocker.
Esophogram neg for mass or stricture. CT brain neg for bleed.

This report was printed by the Health Information Dept, please call (310) 423-3313 with any questions. Page 3

**EXHIBIT B**

1  **LEWIS BRISBOIS BISGAARD & SMITH LLP**
   RIMA M. BADAWIYA, SB# 204174
2     Email: Rima.Badawiya@lewisbrisbois.com
   650 East Hospitality Lane, Suite 600
3  San Bernardino, California 92408
   Telephone: 909.387.1130
4  Facsimile:  909.387.1138

5  **LEWIS BRISBOIS BISGAARD & SMITH LLP**
   LANN G. McINTYRE, SB# 106067
6     Email: Lann.McIntyre@lewisbrisbois.com
   RITA R. KANNO, SB# 230679
7     Email: Rita.Kanno@lewisbrisbois.com
   550 West C Street, Suite 1700
8  San Diego, California 92101
   Telephone: 619.233.1006
9  Facsimile:  619.233.8627

10 Attorneys for Defendants
   SILVERADO SENIOR LIVING, INC., SILVERADO SENIOR LIVING MANAGEMENT, INC.,
11 SUBTENANT 330 NORTH HAYWORTH AVENUE, LLC, LOREN SHOOK, JASON RUSSO

12            UNITED STATES DISTRICT COURT

13     CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

14 | JOE ANN CLACK, by and through her Guardian *ad Litem*, ZO ANNE CLACK, | Case No. |
15 | | **NOTICE TO ADVERSE PARTY OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1331 AND 1442** |
   | Plaintiff, | |
16 | | |
   | vs. | |
17 | | |
18 | SILVERADO SENIOR LIVING, INC; SILVERADO SENIOR LIVING MANAGEMENT, INC., SUBTENANT | |
   | 330 NORTH HAYWORTH AVENUE, LLC; LOREN | |
19 | SHOOK, individually; JASON RUSSO, individually; and Does 1-25, inclusive, | |
20 | | |
   | Defendants. | |
21 | | |

22

23      **TO THE HONORABLE COURT, PLAINTIFFS HEREIN, AND THEIR**

24 **RESPECTIVE COUNSEL OF RECORD:**

25      **PLEASE TAKE NOTICE** that Defendants SILVERADO SENIOR LIVING,

26 INC., SILVERADO SENIOR LIVING MANAGEMENT, INC., SUBTENANT 330

27 NORTH HAYWORTH AVENUE, LLC, LOREN SHOOK, JASON RUSSO

28 ("Defendants"), on May 5, 2021, filed with the Clerk of the Court for the United States

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4815-5587-4278.1                    1
NOTICE TO ADVERSE PARTY OF REMOVAL OF ACTION

District Court, Central District of California, a Notice of Removal and supporting pleadings to accomplish the removal of the action pending in the Superior Court of the State of California in and for the County of Los Angeles, entitled *Joe Ann Clack, by and through her Guardian ad Litem, Zoanne Clack v. Silverado Senior Living, Inc.; Silverado Senior Living Management, Inc., Subtenant 330 North Hayworth Avenue, LLC; Loren Shook, individually; Jason Russo, individually; and Does 1-25, inclusive,* Los Angeles County Superior Court Case No. 20STCV47881, commenced on December 15, 2020.

A copy of the Notice of Removal and supporting papers have also been filed with the Clerk of the Los Angeles County Superior Court, as an attachment to the Notice to State Court of Removal to Federal Court. Plaintiff was served with a copy of the Notice of Removal and supporting papers in conjunction with the Notice to State Court of Removal to Federal Court.

DATED:  May 5, 2021                    LEWIS BRISBOIS BISGAARD & SMITH LLP

By:  */s/ Rita R. Kanno*
      Rima M. Badawiya
      Lann G. McIntyre
      Rita R. Kanno
      Attorneys for Defendants
      SILVERADO SENIOR LIVING. INC.. *et al.*

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4815-5587-4278.1
2
NOTICE TO ADVERSE PARTY OF REMOVAL OF ACTION

1
2

**CERTIFICATE OF SERVICE**
*Joe Ann Clack, et al. v. Silverado Senior Living, Inc., et al.*
USDC-CD, _____ Division, Case No. _____

3

STATE OF CALIFORNIA, COUNTY OF SAN DIEGO

4
5
6

At the time of service, I was over 18 years of age and not a party to the action. My business address is 550 West C Street, Suite 1700, San Diego, CA 92101. I am employed in the office of a member of the bar of this Court at whose direction the service was made.

7

On May 5, 2021, I served the following document:

8
9

**NOTICE TO ADVERSE PARTY OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1331 AND 1442**

10
11

I served the document on the following persons at the following address (including a fax number and email addresses, if applicable):

12
13
14
15

| Jody C. Moore, Esq.<br>Gregory L. Johnson, Esq.<br>Joanna A Hutchins, Esq.<br>JOHNSON MOORE<br>100 E. Thousand Oaks Blvd, Suite 229<br>Thousand Oaks, CA 91360<br>***Attorneys for Plaintiffs*** | Tel: 805.988.3661<br>Fax: 805.494.4777<br>Email: jody@johnson-moore.com<br>        gregory@johnson-moore.com<br>        joanna@johnson-moore.com |
| --- | --- |

16

The document was served by the following means:

17
18

☒ **(BY COURT'S CM/ECF SYSTEM)** Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed above.

19
20

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

21
22

Dated: May 5, 2021                    */s/ Kathie Richmond*
                                      Kathie Richmond

23
24
25
26
27
28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4815-5587-4278.1

**EXHIBIT C**

1  **LEWIS BRISBOIS BISGAARD & SMITH** LLP
   RIMA M. BADAWIYA, SB# 204174
2      Email: Rima.Badawiya@lewisbrisbois.com
   650 East Hospitality Lane, Suite 600
3  San Bernardino, California 92408
   Telephone: 909.387.1130
4  Facsimile:  909.387.1138

5  **LEWIS BRISBOIS BISGAARD & SMITH** LLP
   LANN G. McINTYRE, SB# 106067
6      Email: Lann.McIntyre@lewisbrisbois.com
   RITA R. KANNO, SB# 230679
7      Email: Rita.Kanno@lewisbrisbois.com
   550 West C Street, Suite 1700
8  San Diego, California 92101
   Telephone: 619.233.1006
9  Facsimile:  619.233.8627

10 Attorneys for Defendants
   SILVERADO SENIOR LIVING, INC., SILVERADO
11 SENIOR LIVING MANAGEMENT, INC., SUBTENANT
   330 NORTH HAYWORTH AVENUE, LLC, LOREN
12 SHOOK, JASON RUSSO

13              SUPERIOR COURT OF THE STATE OF CALIFORNIA

14                        COUNTY OF LOS ANGELES

15 JOE ANN CLACK, by and through her Guardian *ad Litem,*  | Case No. 20STCV47881
   ZOANNE CLACK,
16                                                         | *[Assigned for All Purposes to Hon. Stephen*
                        Plaintiff,                          | *Goorvitch, Dept. 39]*
17
           vs.                                             | **DEFENDANTS' NOTICE TO STATE COURT OF**
18                                                         | **REMOVAL TO FEDERAL COURT PURSUANT**
   SILVERADO SENIOR LIVING, INC; SILVERADO               | **TO 28 U.S.C. §§ 1331 AND 1442**
19 SENIOR LIVING MANAGEMENT, INC., SUBTENANT
   330 NORTH HAYWORTH AVENUE, LLC; LOREN                 | Action Filed:  December 15, 2020
20 SHOOK, individually; JASON RUSSO, individually; and Does | Trial Date:     None Set
   1-25, inclusive,
21
                        Defendants.
22

23        **TO THE HONORABLE COURT, PLAINTIFF HEREIN, AND HER RESPECTIVE**

24 **COUNSEL OF RECORD:**

25        **PLEASE TAKE NOTICE** that on May 5, 2021, Defendants SILVERADO SENIOR

26 LIVING, INC., SILVERADO SENIOR LIVING MANAGEMENT, INC., SUBTENANT 330

27 NORTH HAYWORTH AVENUE, LLC;  LOREN SHOOK and, JASON RUSSO ("Defendants"),

28 by and through its counsel, filed the attached Notice, pursuant to 28 U.S.C. §§ 1331, 1441, 1442,

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    and 1446 with the Clerk of the Court for the United States District Court, Central District of

2    California, and the supporting pleadings to accomplish the removal of this action pending in the

3    Superior Court of the State of California in and for the County of Los Angeles, entitled *Joe Ann*

4    *Clack, by and through her Guardian ad Litem, Zoanne Clack v. Silverado Senior Living, Inc.;*

5    *Silverado Senior Living Management, Inc., Subtenant 330 North Hayworth Avenue, LLC; Loren*

6    *Shook, individually; Jason Russo, individually; and Does 1-25, inclusive*, Los Angeles County

7    Superior Court Case No. 20STCV47881, commenced on December 15, 2020.

8         This action now will be placed on the docket of the aforementioned District Court for all

9    further proceedings.

10   DATED:  May 5, 2021                    LEWIS BRISBOIS BISGAARD & SMITH LLP

11                                   By: _____

12                                        Rima M. Badawiya
                                          Lann G. McIntyre
13                                        Rita R. Kanno
                                          Attorneys for Defendants
                                          SILVERADO SENIOR LIVING, INC., *et al.*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



1

**PROOF OF SERVICE**
*Joe Ann Clack, et al. v. Silverado Senior Living, Inc., et al.*
Los Angeles County Superior Court, Case No. 20STCV47881

2

3

STATE OF CALIFORNIA, COUNTY OF SAN DIEGO

4

5

At the time of service, I was over 18 years of age and not a party to the action. My business address is 550 West C Street, Suite 1700, San Diego, CA 92101.

6

On May 5, 2021, I served the following document:

7

**DEFENDANTS' NOTICE TO STATE COURT OF REMOVAL TO FEDERAL COURT PURSUANT TO 28 U.S.C. §§ 1331 AND 1442**

8

9

I served the document on the following persons at the following address (including a fax number and email addresses, if applicable):

10

| | |
|---|---|
| Jody C. Moore, Esq.<br>Gregory L. Johnson, Esq.<br>Joanna A Hutchins, Esq.<br>JOHNSON MOORE<br>100 E. Thousand Oaks Blvd, Suite 229<br>Thousand Oaks, CA  91360<br>***Attorneys for Plaintiffs*** | Tel:   805.988.3661<br>Fax:  805.494.4777<br>Email:  jody@johnson-moore.com<br>        gregory@johnson-moore.com<br>        joanna@johnson-moore.com |

11

12

13

14

15

The document was served by the following means:

16

☒ **(BY ELECTRONIC TRANSMISSION ONLY)** Only by emailing the document to the person at the email address listed above based on notice provided on March 16, 2020, that during the Coronavirus (COVID-19) pandemic, this office will be working remotely, not able to send physical mail as usual, and is therefore using only electronic mail. No electronic message or other indication that the transmission was unsuccessful was received within a reasonable time after the transmission.

17

18

19

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

20

Dated:  May 5, 2021

*/s/ Kathie Richmond*

21

Kathie Richmond

22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

**CERTIFICATE OF SERVICE**
*Joe Ann Clack, et al. v. Silverado Senior Living, Inc., et al.*
USDC-CD, _____ Division, Case No. _____

STATE OF CALIFORNIA, COUNTY OF SAN DIEGO

At the time of service, I was over 18 years of age and not a party to the action. My business address is 550 West C Street, Suite 1700, San Diego, CA 92101. I am employed in the office of a member of the bar of this Court at whose direction the service was made.

On May 5, 2021, I served the following document:

**DEFENDANTS' NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT PURSUANT TO 28 U.S.C. §§ 1331, 1441, 1442 AND 1446**

I served the document on the following persons at the following address (including a fax number and email addresses, if applicable):

| | |
|---|---|
| Jody C. Moore, Esq.<br>Gregory L. Johnson, Esq.<br>Joanna A Hutchins, Esq.<br>JOHNSON MOORE<br>100 E. Thousand Oaks Blvd, Suite 229<br>Thousand Oaks, CA  91360<br>***Attorneys for Plaintiffs*** | Tel:   805.988.3661<br>Fax:   805.494.4777<br>Email: jody@johnson-moore.com<br>            gregory@johnson-moore.com<br>            joanna@johnson-moore.com |

The document was served by the following means:

☒ **(BY COURT'S CM/ECF SYSTEM)** Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed above.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  May 5, 2021                         */s/ Kathie Richmond*
                                                          Kathie Richmond

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# CERTIFICATE OF SERVICE
**_Joe Ann Clack, et al. v. Silverado Senior Living, Inc., et al._**
USDC-CD, _____ Division, Case No. _____

STATE OF CALIFORNIA, COUNTY OF SAN DIEGO

At the time of service, I was over 18 years of age and not a party to the action. My business address is 550 West C Street, Suite 1700, San Diego, CA 92101. I am employed in the office of a member of the bar of this Court at whose direction the service was made.

On May 5, 2021, I served the following document:

**DEFENDANTS' NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT PURSUANT TO 28 U.S.C. §§ 1331, 1441, 1442 AND 1446**

I served the document on the following persons at the following address (including a fax number and email addresses, if applicable):

| | |
|---|---|
| Jody C. Moore, Esq.<br>Gregory L. Johnson, Esq.<br>Joanna A Hutchins, Esq.<br>JOHNSON MOORE<br>100 E. Thousand Oaks Blvd, Suite 229<br>Thousand Oaks, CA  91360<br>**_Attorneys for Plaintiffs_** | Tel:  805.988.3661<br>Fax:  805.494.4777<br>Email: jody@johnson-moore.com<br>  gregory@johnson-moore.com<br>  joanna@johnson-moore.com |

The document was served by the following means:

☒ **(BY COURT'S CM/ECF SYSTEM)** Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed above.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  May 5, 2021

_/s/ Kathie Richmond_
Kathie Richmond

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

92048504v.1

**CERTIFICATE OF SERVICE**